## WESTERN COAL & MINING CO. v. BERBERICH.

### (Circuit Court of Appeals, Eighth Circuit. April 10, 1899.)

### No. 1,094.

1. REVIEW—CONFLICTING EVIDENCE.

   The court will not review the verdict of a jury where there is some evidence to sustain it, although it may be against the apparent weight of evidence.

2. SAME—OPINION EVIDENCE—SUFFICIENCY OF OBJECTION.

   An objection to the opinion of a witness as irrelevant and incompetent is too general and indefinite.

3. EXPERT TESTIMONY—HYPOTHETICAL QUESTION.

   Where a question asked an expert witness is framed on the assumption of certain facts, counsel may assume the facts in accordance with his theory of them.

4. SAME.

   An expert may be asked a question involving a point to be decided by the jury.

5. TRIAL—REQUESTS TO CHARGE.

   Where the charge in chief was a clear and accurate statement of the law, covering every aspect of the case, it was proper to refuse special requests.

6. SAME—SINGLING OUT PARTICULAR EVIDENCE.

   The court properly refused requests to charge that singled out and gave undue prominence to particular items of evidence.

7. DUTY OF MASTER—OPERATION OF MINES.

   It is the duty of a master operating a mine to use all appliances readily attainable, known to science, for the prevention of accidents arising from the accumulation of gas or other explosive substances.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

This action was brought by Joseph Berberich, plaintiff below, against the Western Coal & Mining Company, defendant below, to recover damages for personal injuries sustained by the plaintiff, while working for the defendant as a coal miner in its coal mine, by reason of an explosion of gas in the mine. The cause of action is thus stated in the complaint: "That prior to the 18th day of December, 1893, defendant employed and engaged plaintiff to work in said coal mine of defendant at Denning, Franklin county, Arkansas, as a miner to dig and mine coal; that by reason of said employment plaintiff was by defendant required to go down in said mine a great distance in the earth, and plaintiff says that, by reason of defendant's so employing him to work in said mines as aforesaid, it then and there became and was the duty of defendant to furnish plaintiff a reasonably safe place to work in said mine as said miner; yet plaintiff says that defendant wholly disregarded its duty towards plaintiff in that behalf, and that on the said 18th day of December, 1893, while plaintiff was engaged at work for defendant as such miner in one of the rooms of said mine at Denning, Arkansas, the defendant, by and through its agents and servants, so carelessly, negligently, and wrongfully conducted and managed said room in said mine, in this, that defendant failed to provide a sufficient amount of fresh air in said mine and room to keep them free from gas, fire damp, or other combustible matter unknown to plaintiff, and by reason of his failure aforesaid allowed the same to accumulate in said room and mine, which the defendant then well knew, or by the exercise of ordinary care and diligence, on the part of defendants and its agents, should have known; and that on the said 18th day of December, 1893, without any fault or negligence on plaintiff's part whatever, the said gases, fire damp, and combustible matter exploded, and by reason of said explosion plaintiff was burned, wounded, crippled, disfigured, and maimed for life."

The defendant denied the negligence, alleged the accident was caused by the negligence of the plaintiff's fellow servants, and that the plaintiff was guilty of contributory negligence. There was a trial before a jury, and a verdict and judgment for the plaintiff, and the defendant sued out this writ of error. The following are some of the leading facts which the testimony tended to establish: Four or five days before the explosion occurred, a rock 15 to 18 feet long, 2 feet wide, and 18 inches deep in the middle, tapering to a feather edge, fell from the roof of the room in which the plaintiff and one Noll were working, leaving what miners call a "horseback." The fall of this rock was followed by a sudden flow of gas into the room, on account of which the pit boss gave orders not to work in the room on that and the following day. The third day after the explosion the pit boss examined the room, said there was gas in it, and gave them Davy or safety lamps to work with, which they used that day and the next. The next day was Sunday, and they did not work. About 7 o'clock on Monday morning the plaintiff and Noll, and Brown, the pit boss, met at the mine. Brown went into the room, examined it, and then called the plaintiff and Noll in and told there was no danger, and to go to work with the miners' common open lamps, but to keep their lamps down, and not carry them on their hats. They went to work as directed, and worked until 3 o'clock in the afternoon, when a lump of coal which they had wedged off of the roof of the room fell to the floor, carrying with it a piece of slate two or three feet square and half an inch thick, and immediately the explosion of gas occurred. The main controversy between the parties was over the question whether the explosion was the result of a sudden rush of gas released by the removal of the lump of coal and slate from the roof, or whether it was produced by the sudden agitation of the gas already in the room by the falling of the coal and slate, or from the increased volume of gas resulting from its gradual or normal increase owing to the defective ventilation of the room resulting from the negligence of the defendant or its pit or fire boss.

The court gave the following instructions at the defendant's request: "If the jury believe from the evidence that the defendant's fire boss inspected plaintiff's room on the morning of the day plaintiff was injured, before plaintiff went to work therein, and the fire boss told plaintiff the room was safe, but to work with his lamp on the ground; that plaintiff entered the room about 7 o'clock in the morning, and continued to work therein without accident or injury up to about 3 o'clock in the afternoon; that the quantity of air circulating through plaintiff's room was the same from the time he began work until the time of the explosion; and that while working in that room, at about the hour of 3 o'clock in the afternoon, wedging the top coal, a piece of rock or slate fell, and that the falling of this rock exposed the gas feeders, and that instantly upon the fall of this rock the explosion took place,—then, under this state of facts, no such negligence as is charged in plaintiff's complaint is shown as entitles plaintiff to recover, provided you also find that the gas which exploded was gas coming from this feeder, or that whatever gas was in the room or working place would not have exploded except for the gas coming from the feeder. If the jury believes from the evidence that the explosion causing the injury for which plaintiff sues was produced by the unexpected developing and exposure of the gas, or the sudden outburst of gas caused by the fall of rock or slate from the roof of the room in which plaintiff was at work, then such explosion was an accident for which defendant is not liable, and the jury should find a verdict for the defendant. The law does not impose on the defendant company the duty and burden of insuring absolutely its employés against casualties and injuries, for there are certain dangers incident to, and inseparable from, the nature of such work, known to exist, or to be ordinarily attendant thereon, the risk of which the employé takes upon himself, and for which risk the law presumes he receives sufficient compensation from the wages paid him. For instance, if, in such a mine, there should be a sudden or unforeseen uncovering of a gas fissure, or feeder (as called by the miners), or, if there should be ever present in such a mine a certain per centum of fire damp or gas, which no reasonable foresight or exertion of the company can discover or prevent, and there should be more or less exposure to casualties on account of such incident, it would be of the risks assumed by the employés."

Ira D. Oglesby, for plaintiff in error.

Sam R. Chew (Henry L. Fitzhugh, on brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge (after stating the facts as above). At the close of the testimony the defendant preferred a request for a peremptory instruction to the jury to return a verdict for the defendant, upon the ground that the testimony was not sufficient to warrant a verdict for the plaintiff. The court refused to give the instruction, and this ruling is the first assignment, and apparently the one chiefly relied on, as some 60 pages in the brief of 73 pages are taken up with its discussion. The testimony as to the facts was voluminous and conflicting, and the opinions of the experts, as commonly happens, supported the contention of the party calling them. There is no ground for the contention that there was no evidence to support the verdict, at most it could only be claimed that the verdict was against the apparent weight of the evidence; but that gives this court no warrant to meddle with the verdict of the jury. To do so would be an invasion of the province of the jury, and a practical denial of the right of trial by jury. It was the exclusive province of the jury to pass on the credibility of the witnesses, and, after rejecting the testimony of those whom they discredited, the great preponderance of the evidence may have been with the plaintiff.

David Allister, an old and expert miner, who had filled the position of fire boss in mines, and was familiar with the gas that accumulates in mines, and the causes of its accumulation, the dangers resulting from it, and the proper means of expelling it, and who was evidently familiar with the facts of the case and the contentions of the respective parties, was asked this question by the plaintiff:

"Take the character of room that we have spoken of,—that is, fifty feet back from the side entry, where a man is to enter and work towards the face of the working place, getting out the coal, and a horseback should fall out, say, 15 feet to 18 feet long diagonally across the room, that would be anywhere from 16 to 18 inches deep and 15 to 18 feet long across the room, left in that condition, and the fire boss came into the room in the morning, say, about 7 o'clock, with a safety lamp, and should discover some gas in that room or horseback, and he should inform [—] that [there] were to work there that they might go to work with their lamps down; then whether or not that would be an ordinary safe place to work."

To which question counsel for the defendant objected "because irrelevant and incompetent, and because the fact whether or not the room was a safe place to work was a question of fact for the jury, and not a matter of opinion for the witness, and because there is no proof upon which to base such hypothetical question, and the hypothetical question does not state the facts testified to in the case." The objection was overruled, and this ruling is assigned for error.

The question seems to be imperfectly reported. We will assume the record contains the substance of it. The question was probably not framed with as much nicety and precision as it might have been, but it is also true that no two lawyers would have framed the question in the same language; and, if the form of such questions is to be subjected to hypercriticism, very few of them will survive the

test. If every slight defect or slip which a microscopic eye can detect in a question or answer or the charge of the court is to be counted prejudicial error, litigation will become interminable over subtle refinements and quibbles which were not seen or regarded by the judge or jury at the trial, and which had no bearing whatever on the decision of the case on its merits. Such an administration of the law would be intolerable. "But there is nothing," said Judge (now Mr. Justice) Brown, of the supreme court of the United States, "which tends to belittle the authority of the courts or to impair the confidence of the public in the certainty of justice as much as the habit of reversing cases for slight errors in admitting testimony, or trifling slips in the charge. * * * Better by far the practice of the English courts and the federal supreme court, where every intendment is made in favor of the action of the lower court, and cases are rarely reversed except'for errors going to the very merits,—errors which usually obviate the necessity of a second trial." Report American Bar Association, 1889, p. ——. Though these remarks of the learned justice were not uttered from the bench, they express the rule upon the subject by which appellate courts should be guided, and they have our approval. There was a map of the room in the mine in which the accident occurred and of the adjacent rooms, which was before the witness, and he had heard the testimony tending to support the theories of the respective parties, and it was upon the supposition that the facts were as plaintiff claimed them to be that the witness' opinion was based. It is, in substance, the same question which the defendant propounded to its expert witness, by which it sought to and did elicit answers the very reverse of the answers given by the plaintiff's witness.

It was not objected at the trial, and it is not claimed here, that the witness was not qualified to testify as an expert, and it was not claimed in argument or in the brief that the facts of the case were not such as to make expert, or more properly opinion, testimony admissible. Indeed, it is expressly stated in the brief of the counsel for plaintiff in error:

"Had counsel put the questions in proper form, and embodied in them all the material facts testified to by the witnesses, they might have been asked to give their opinion as to the cause of the explosion."

But the form of the question will stand the test against any of the objections brought against it at the trial, which are all that can be considered by this court. It was objected to (1) "because irrelevant and incompetent," which is too general and indefinite to be dignified with the title of an exception (Insurance Co. v. Miller, 19 U. S. App. 588, 8 C. C. A. 612, 614, and 60 Fed. 254; Railway Co. v. Hall, 32 U. S. App. 60, 14 C. C. A. 153, and 66 Fed. 868); (2) "because the fact whether or not the room was a safe place to work was a question of fact for the jury, and not a matter of opinion for a witness;" as we have seen, this objection was properly abandoned on the argument and in the brief, and if it had been insisted on it would have been of no avail (Rog. Exp. Test. § 120; Railway Co. v. Edwards, 49 U. S. App. 52, 24 C. C. A. 300, and 78 Fed. 745); (3) "be-

cause there was no proof upon which to base such hypothetical question," but there was, as shown by the record, a large volume of proof upon the subject; and (4) "that the hypothetical question does not state the facts testified to in the case," but the law does not require that it should. The testimony of a witness who testifies to opinions is founded either on personal knowledge of the facts, or else is based on facts shown by the testimony of others, or on a hypothesis specially framed on certain facts assumed to be proved for the purpose of the inquiry. Where the opinion of the witness is based on facts testified to by others, it is not necessary that he should have heard all the evidence. It is sufficient if it appears he has heard all the testimony which is material to the subject of the inquiry. And when the question is framed on the assumption of certain facts, counsel may assume the facts in accordance with his theory of them. It is not essential that he should state the facts as they actually exist. Rog. Exp. Test. §§ 24, 27, and cases cited. And it is no objection that an expert is asked a question involving the point to be decided by the jury. Transportation Line v. Hope, 95 U. S. 297; Railroad Co. v. Meyers, 24 U. S. App. 295, 11 C. C. A. 439, 442, and 63 Fed. 793.

The defendant preferred several requests for charges which were rightly refused, for two reasons: First, the charge in chief was a remarkably clear, logical, and accurate statement of the law of the case, and was comprehensive enough to cover every aspect of the case, under the evidence; and, second, the special requests singled out particular items of the testimony to the exclusion of all other evidence in the case, which the jury were bound to consider in forming their verdict. The practice of giving undue prominence to isolated facts in the case by singling them out and making them the subject of special instruction is vicious, and has been repeatedly condemned by the supreme court. Smith v. Condry, 1 How. 28, 36; Railway Co. v. Ives, 144 U. S. 408, 433, 12 Sup. Ct. 679. It gives undue prominence to the facts thus singled out, and tends to minimize and disparage other facts of equal or greater importance, and unnecessarily burdens the jury with instructions which tend to confuse and mislead them. Where the charge in chief comprehends all the facts the jury can rightfully consider in making up their verdict, all special requests to charge as to the legal effect of isolated facts ought to be rejected.

It is assigned for error that the court in the course of its charge told the jury:

"It was the duty of the defendant to use all appliances readily attainable, known to science, for the prevention of accidents arising from the accumulation of gas or other explosive substances in its mines."

In the case of Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, which was an action to recover damages for personal injuries resulting from the explosion of powder and caps in an iron mine, the court discusses at length the duty of mine owners to their employés, and laid down the following rule:

"Occupations, however important, which cannot be conducted without necessary danger to life, body, or limb, should not be prosecuted at all without all

reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable, known to science, for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence."

It will be observed that the clause of the court's charge excepted to is "laid down as a legal principle" by the supreme court. The charge is not that the defendant must use "all appliances attainable," etc., but all appliances "readily attainable." This is imposing a very reasonable burden, for "readily," according to the dictionaries that are accepted authority, means "quickly, speedily, easily [Century Dictionary]; at hand, immediately available, convenient, handy [Standard Dictionary]." In effect, the contention of the plaintiff in error is that the court should have charged the converse, and told the jury that in occupations attended with great and unusual danger there is no obligation resting on the employer to use the appliances known to science for the prevention of accidents, although they are readily and easily attainable and immediately available, convenient, and handy. The law has not yet reached that degree of barbarity. The case of Pacific Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, does not conflict at all with the later case of Mather v. Rillston, supra. The former related to an "unblocked frog" on a railroad track, into which the deceased voluntarily placed his foot twice, after being admonished of the danger. "Unblocked frogs" are open and visible, and the danger connected with them known and avoidable by employés and all others. In the case of coal mines, employés can very often neither see nor detect the danger they are exposed to, and their safety is absolutely dependent on the intelligent and constant use of methods and appliances more or less scientific, over which they have no control. There would seem to be room, therefore, for a well-grounded distinction between an "unblocked frog" on a railroad track and a coal mine. But if there is not, and the opinions in the two cases conflict, the doctrine of Mather v. Rillston, being the later case, must prevail. This court has approved the rule in Mining Co. v. Ingraham, 36 U. S. App. 1, 17 C. C. A. 71, and 70 Fed. 219, and in principle applied it in Railway Co. v. Jarvi, 10 U. S. App. 439, 3 C. C. A. 433, and 53 Fed. 65, and its soundness is no longer open to question. There are other assignments, but such as do not fall within the reasoning of those we have decided are not of any general importance, and have no merit. They have all been carefully examined. The judgment of the circuit court is affirmed.