## ÆTNA LIFE INS. CO. v. DAVIS.

(Circuit Court of Appeals, Eighth Circuit. October 13, 1911.)

No. 3,581.

1. INSURANCE (§ 527*)—ACCIDENT INSURANCE—CONSTRUCTION OF POLICY—INJURY WHILE PASSENGER IN ELEVATOR.

It is sufficient to bring a case within a clause of an accident insurance policy subjecting the company to double liability for an injury to insured while "riding as a passenger * * * in an elevator provided for passenger service," if at the time of an injury insured had so far entered an elevator as to be within it in common parlance, although some part of his body, as his foot, may have protruded.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1312, 1313; Dec. Dig. § 527.*

Accident insurance, risks and causes of loss, see notes to National Acc. Society v. Dolph. 38 C. C. A. 3; New Amsterdam Casualty Co. v. Shields, 85 C. C. A. 126.]

2. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS—REFUSAL.

The refusal to give a requested instruction was not error, where it was given in substance in the charge, although in different language.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. § 260.*]

In Error to the Circuit Court of the United States for the Western District of Missouri.

Action at law by Ada M. Davis against the Ætna Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Clement A. Lawler (W. T. Johnson and Clarence S. Palmer, on the brief), for plaintiff in error.

Leslie J. Lyons (George L. Davis, on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and MARSHALL and W. H. MUNGER, District Judges.

MARSHALL, District Judge. This action is based on a policy of accident insurance issued by the insurance company, plaintiff in error, to Daniel F. Cobb, by which it insured Cobb against disability or death resulting directly from bodily injuries effected solely through external violent and accidental means. The sum to be paid in case of death was $5,000, subject, however, to be doubled if death resulted from any of certain specified accidents. Section 7 of the policy provided:

"If such injuries are sustained * * * while insured is riding as a passenger * * * in an elevator provided for passenger service, * * * the amount to be paid * * * shall be double the sum otherwise payable for such injuries; but the increased benefits provided by this section 7 shall not apply to any accident or injury, fatal or otherwise, sustained while getting on or off or being upon the steps of any railway or street railway car."

Cobb received an accidental injury resulting in his death. The insurance company paid to his widow, Ada M. Cobb (now Ada M.

Davis, the defendant in error), the beneficiary named in the policy, the $5,000 fixed in the policy as the limit of ordinary liability. The beneficiary claims that the insured was injured "while a passenger in an elevator provided for passenger service," and hence that the insurance company is subject to a double liability. This action was brought to enforce this contention, and resulted in a verdict and judgment in favor of the beneficiary. For a reversal of this judgment the principal contention of the plaintiff in error is that it was entitled to a directed verdict, as requested by it, for the reason that the evidence fails to show that at the time of the accident Cobb was in an elevator, or that that elevator was then provided for passenger service. This requires a somewhat detailed statement of the circumstances attending the accident.

Cobb was a real estate dealer, and had an office on the fourth floor of the Fidelity Trust Building in Kansas City. There was a passenger elevator in that building for the use of the tenants and others properly resorting there. This elevator was operated by a specially selected operator from an early hour in the morning until 6:30 p. m., when it was ordinarily shut down and the operator went home. After the closing hour the janitors of the building were permitted to use the elevator for their purposes. There was evidence, though not undisputed, that Cobb had a special arrangement with the vice president and general manager of the company owning the building, and duly authorized to act in its behalf, to the effect that twice a month, when he desired to assemble in his office prospective purchasers for Texas lands after the usual closing time of the elevator service, he might use this elevator and one of the janitors would act as operator. The night of the accident was one of these occasions. At about 7:30 p. m. on that night Avery, a janitor, was operating the elevator. Cobb was seen to stop at the door of the elevator shaft on the fourth floor. Soon after, he was heard to cry out:

"Oh! my God; he has crushed my foot."

Another of the janitors, hearing a noise, went to the shaft to investigate. The elevator cage was then from four to five feet above the fourth floor, and Avery said to him:

"My God! Will, I have killed old man Cobb; he has fallen down the elevator shaft, and for God's sake run down."

Cobb's body was found at the bottom of the shaft. His left foot had been crushed, and the shoe had been torn from it. This shoe was found in the grille work or grating of the elevator shaft; the toe of the shoe pointing downward, most of the sole protruding, but the heel still within the shaft. This shoe was so found at a point in the shaft above the door on the fourth floor. Avery, the janitor, is the only living eyewitness to the accident. He described it in this way:

"Mr. Cobb wanted to come down. I stopped with the elevator a little too high, and as I came down I touched the spring. He shoved the door open and stepped up. His toe was a little bit over the landing of the elevator and I was on it, and he made some exclamation as if in pain, or 'Oh!' or something, and I reversed the power and went up some little distance—I am not sure exactly how high. Mr. Cobb, in the meantime, had caught hold of the

elevator some way, and was leaning against the hob, as I would call it, of the elevator. Mr. Cobb was drinking, and as I raised, and reversed the power, and shot the elevator up, why Mr. Cobb fell back and down the shaft."

If Cobb had in fact made an arrangement for the use of this elevator for passenger service after the usual closing time, as testified to, there can be no question that at the time of the accident it was provided for passenger service. The evidence as to this arrangement was conflicting; but it is not contended that the question ought to have been taken from the jury. It was submitted under proper instructions, and the finding of the jury against the insurance company concludes it here.

[1] The more difficult question is whether Cobb was a passenger in an elevator. If Avery's testimony be true, he had only offered himself as a passenger, and had not in any respect entered the elevator; but the jury had the physical facts of the accident before them. If Cobb did not enter the elevator, and his foot was crushed beneath its floor, how, then, was it possible for the shoe to be stripped from the crushed foot by catching in the grating at a point above the door of the elevator? It is evident that Cobb was within the elevator shaft before he fell to the bottom, for the shoe was pressed from within outwards. Whatever the true circumstances may have been, Avery's testimony is inconsistent with the physical facts, and did not conclude the question before the jury. The reasonable deduction seems to be that Cobb had substantially entered the elevator; that as the power was suddenly reversed, and the elevator shot up, he lost his balance and fell outward through the open door. His foot, the last part of his body to leave the cage, was caught between the floor of the elevator and the grating above. At least, the jury were justified in reaching this conclusion; and we see no reason to disturb their finding.

It is insisted that the case of Ætna Life Insurance Co. v. Vandecar, 86 Fed. 282, 30 C. C. A. 48, decided by this court, is in point here. In that case the insured was standing on the platform of a moving railway car, preparing to alight when it stopped at a station, and by a jerk of the car was thrown off. Double liability was claimed under the clause of the policy which provided for it in case of accidental death while riding in a passenger conveyance. It was held that the intent of the policy was to stipulate for a double liability while the insured was riding in an exceptionally safe place, and that while standing on the platform of the car he was not riding in a passenger conveyance within the meaning of the contract. This case is inapplicable to the facts here as, it must be inferred, the jury found them. They were in substance instructed to give to the words "while a passenger in an elevator" the meaning they would in common acceptation be held to have—that to be such a passenger Cobb must not only have offered himself for carriage and been accepted, but also have so far entered the elevator as to be in the elevator in common parlance; in other words, that a mere protrusion of some part of his body was not inconsistent with his being considered in the elevator. This, we think, was correct. In Depue v. Travelers' Insurance Co. (C. C.) 166 Fed.

183, under facts much similar, the insured was held to be in the elevator.

[2] Error is assigned to the refusal of the court to instruct the jury to the effect that, if the accident occurred while Cobb was attempting to enter the elevator and before he in fact entered it, the insurance company was not liable. This instruction was in substance given, when the jury were instructed that, unless Cobb was at the time of the accident in the elevator, their verdict must be in favor of the insurance company. The requested instruction differed verbally, but not essentially, from that given. No right of the plaintiff in error was violated by a failure to instruct in the identical language of its request. Western Coal & M. Co. v. Berberich, 94 Fed. 329, 36 C. C. A. 364; Trumbull v. Erickson, 97 Fed. 891, 38 C. C. A. 536.

It is also contended that error was committed in permitting the witness Strong to testify, over the objection of the insurance company, as follows:

"I had some 12 or 14 men who had just come in with me, to take on to Texas. I asked Mr. Brent, as near as I can remember: 'Well, what am I going to do with these men? Has the elevator service been discontinued?' He said: 'Oh, no; just as soon as the excitement subsides, why the elevator will be in service at your service.'"

The objection to the evidence was on the ground that, occurring after the accident, it did not refer to it, and was not a part of the res gestæ. This ruling was made under these circumstances: Strong was in the employ of Cobb, and on the night of the accident was in charge of the men to be assembled in Cobb's office. Brent was the vice president of the corporation owning the building and had general control of it. The conversation detailed by Strong occurred a few minutes after the accident, and while the ensuing excitement was still evident. The testimony, if true, tended to prove that the elevator had not ceased passenger service on that night at 6:30 p. m., as contended by the insurance company, but was at the time of this conversation still in service, except as the temporary excitement interfered with it. Strong was present at and had already testified to the arrangement claimed to have been made by Cobb with Brent for the special elevator service, and to the effect that such service had been uniformly furnished prior to the accident pursuant to that arrangement. So that, even if this evidence as to Brent's statements after the accident was erroneously admitted, it was not prejudicial, and does not require the reversal of the judgment.

It follows that the judgment must be affirmed, and it is so ordered.