THE STATE ex rel. WILLIAM H. COX v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

Division Two, January 6, 1926.

1. **CERTIORARI: Conflict in Decisions: Court of Appeals Case.** A writ of *certiorari* to quash the opinion of a court of appeals, based on conflict in decisions, cannot be maintained on the ground that it is in conflict with a decision of another court of appeals.

State ex rel. Cox v. Trimble.

2. ———: ———: Falling in Elevator Shaft: Failing to Look: Contributory Negligence. The Court of Appeals in holding that a farmer, who daily for more than a year had delivered milk to defendant's creamery, entered from a platform along the outer wall, through a doorway, guarded by swinging screen doors, to an electric elevator, if the elevator was at the first floor, or over the top of the elevator if it was in the basement, was guilty of contributory negligence, as a matter of law, in pulling back the screen doors and entering, in broad daylight, without looking, at a time when the elevator was not there and fell into the shaft to its bottom and was injured, did not contravene any prior decision·of this court. The court in holding that, the screen doors guarding the entrance to the elevator being closed, the farmer, in opening them and stepping in, knowing that the elevator shaft was there, without taking even a glance to see whether it was dangerous, or whether the elevator was in its usual place, as his own evidence, without contradiction, clearly shows, was guilty of contributory negligence, contravened no previous decision of this court.

3. CERTIORARI: To Court of Appeals: Conflict in Decision: Case Wrongly Decided. Where a court of appeals has jurisdiction over the subject-matter and of the parties, it has an inherent right to promulgate a rule of law, whether it be right or wrong, with the one limitation that its rulings must harmonize with the previous decisions of this court on the same or similar facts; and before its opinion, in sustaining a demurrer to the evidence, can be quashed upon *certiorari*, it must affirmatively appear from the record that said opinion is in conflict with some designated decision of this court based on similar facts.

Certiorari, 11 C. J., Section 341, p. 193, n. 46 New; Section 378, p. 210, n. 49 New. Courts, 15 C. J., Section 516, p. 1090, n. 39; Section 518, p. 1093, n. 69. Negligence, 29 Cyc., p. 469, n. 76; p. 470, n. 87, 88; p. 515, n. 99, 1.

*Certiorari.*

WRIT QUASHED.

*S. H. Ellison, M. D. Campbell* and *Chas. E. Murrell* for relator.

(1) Where in the opinion of the Court of Appeals reference is made to the petition, instruction, or any written instrument, the documents referred to are there-

by drawn into the opinion by reference, and are for consideration by this court in *certiorari,* and by parity of reason where in the opinion of the Court of Appeals excerpts from the evidence of a witness are set forth, the whole of such witness' testimony should be reviewed. State ex rel. v. Trimble, 249 S. W. 902; State ex rel. v. Trimble, 247 S. W. 119; State ex rel. v. Trimble, 239 S. W. 467; State ex rel. v. Ellison, 281 Mo. 667. (2) The opinion in holding that plaintiff was guilty of contributory negligence defeating recovery because he failed to inspect the roadway before entering upon it, is in conflict with the rule announced in the cases of Crawford v. Kansas City Stockyards, 215 Mo. 395, 414; Langdon v. Railroad, 72 Mo. 392; Barr v. Kansas City, 105 Mo. 551; Cox v. Laundry Co., 267 S. W. 77. (3) If the opinion of the Court of Appeals violates legal principles it should be quashed. State ex rel. v. Reynolds, 226 S. W. 564; State ex rel. v. Reynolds, 286 Mo. 204; State ex rel. v. Reynolds, 226 S. W. 553. ''It is conflict of legal principles we seek upon *certiorari* rather than gray mule cases.'' State ex rel. v. Reynolds, 226 S. W. 550. (4) The opinion of the Court of Appeals violates legal principles in this, that the court endeavors to pass upon the weight of the testimony, draw deductions therefrom, and decide disputed questions of fact, which it was the sole province of the jury to pass upon. State ex rel. v. Trimble, 273 Mo. 218; State ex rel. v. Trimble, 300 Mo. 92. (5) The theory upon which the case was tried in the lower court was entirely ignored or misunderstood by the Court of Appeals. In the trial court the case was tried upon the theory that the floor or top of the elevator was a part of the roadway, and that it was the custom and practice to keep the same in position for use for such purpose, and that relator and others were in the habit of so using it. The Court of Appeals ignored that theory and adopted the rule applicable to the owner of buildings and elevators in which the elevator was used for the purpose of carrying passengers and freight, and also found that there

State ex rel. Cox v. Trimble.

was no custom and practice shown, nor that the case was submitted upon that theory; all of which was in conflict with the record as stated in the opinion. State ex rel. Bush v. Sturgis, 221 S. W. 92; State ex rel v. Trimble, 271 S. W. 47.

*Grover, Tipton & Graves* and *Higbee & Mills* for respondents.

(1) The plaintiff's own testimony is that the entrance to the elevator was guarded by two doors that were kept closed by strong springs; that it was a clear day; that he opened one of the doors and dragged a milk can after him into the shaft and did not look to see if the platform was at the floor. There is no evidence that he thought or believed there was a permanent platform or roadway into the building. He knew there was a shaft and elevator and that it was used as an elevator to and from the basement and two floors of the building. There is no conflict with the cases cited by relator or any decisions of this court. (2) This court will not examine the bill of exceptions for the facts, but will adopt and follow the facts as found and stated by the Court of Appeals in its opinion. The only exception to this rule is that when any pleading, instruction or other written instrument is referred to, then it may be considered. State ex rel. v. Trimble, 274 S. W. 418; State ex rel. v. Cox, 274 S. W. 375; State ex rel. v. Allen, 294 Mo. 220; State ex rel. v. Allen, 250 S. W. 583, The Court of Appeals held the evidence did not establish a roadway; that there was no proof of a custom to keep the elevator at the first floor; such was the conclusion of fact and the interpretation placed on the evidence by the Court of Appeals. That was not a question of law, but one of fact. It is clear this court "will not inquire whether the evidence is susceptible of the construction" given it by the Court of Appeals, but only as to the rule of law applied to the facts as determined by that court. State ex rel. v. Trimble, 274 S. W. 416. (3) Petitioner cites no

case where the facts involved were similar to those in this case. Here petitioner opened the doors which were complete barriers to the elevator shaft and then stepped into the shaft. In the cases cited by petitioner there were no guards. Therefore, since there is no decision of this court wherein the facts are similar, this court will not review the decision of the Court of Appeals, even though it may not agree with its conclusions. State ex rel. v. Allen, 246 S. W. 540; State ex rel. v. Allen, 267 S. W. 844; State ex rel. v. Allen, 256 S. W. 1051.

RAILEY, C.—This is an original proceeding in this court, for *certiorari,* to have brought up the record of the Kansas City Court of Appeals in the case of William H. Cox, respondent, v. James D. Bondurant, Sr., et al., co-partners doing business under and by the name of Palace Bakery, appellants, decided by the Court of Appeals in May, 1925. Said cause was tried in the Circuit Court of Adair County, resulting in a judgment in favor of relator, Wm. H. Cox, in the sum of $3,500. An appeal was granted defendants to the Kansas City Court of Appeals, and the judgment in favor of relator was reversed. A motion for rehearing was filed in the Court of Appeals, and overruled. Thereupon application was made to this court for a writ of *certiorari* to quash the record of said Court of Appeals in the above-entitled cause.

The opinion of the Court of Appeals was written by TRIMBLE, P. J., in which all the members of said court concurred. He reversed the case on the ground that plaintiff Cox was guilty of contributory negligence which precluded a recovery. In disposing of the demurrer to the evidence, Judge TRIMBLE has made an elaborate statement of the facts, which cannot well be abbreviated and, hence, we make his statement of the law and facts a part of our opinion, in order to consider the questions raised by relator at the conclusion of same. Without caption, said opinion reads as follows:

"Plaintiff received some bruises and an injury to his left ankle when he fell into an elevator shaft on defendants' premises. He brought this suit for damages and recovered a verdict and judgment for $3500. Defendants have appealed.

"In Kirkville, Missouri, defendants own a two-story brick business building with basement, in which they conduct a general bakery and creamery business. The west side or wall of said building abuts upon an alley, and against said west wall is a platform about two feet wide, eighteen feet long and nearly four feet high. The platform is on a level with the first floor of the building. Entrance from the platform into the building is had through a doorway in said west wall. Just inside the building and in this doorway is the elevator shaft, so that when the elevator is at the first floor, one can step through the doorway immediately from the platform onto the floor of the elevator. The latter was operated by electricity and could be moved from the basement to the first and second floors. When it reached either the basement or the top floor, it would stop automatically; but, in order to have it stop at the first floor, whoever was operating it had to pull a small control rope and put it into a slot or horseshoe shaped device. The north and south sides of the elevator shaft were boarded up solid to the top of the building. The east side of the elevator shaft was protected by a gate which automatically closed when the elevator was lowered or raised from the first floor. The west side of the shaft was, of course, the doorway in the west wall of the building; and in the summer time this doorway was protected by two wire screen doors, the doorway being five or six feet wide and seven feet high. These doors were kept closed by means of stout springs, so that in entering from the outside platform to the elevator one must open one or both of said doors and hold them open until he steps inside, whereupon the screen doors would immediately close on account of their springs. Thus access to the interior of the building from the platform was had through the doorway and across the ele-

vator when at the first floor, or, if it were at the basement, the top of the elevator, which was covered with a heavy wire netting or mesh, afforded a means of going over it and through the gate on the east side to the interior of the building. However, when the elevator was thus at the basement, this top of the elevator was two inches or more above the level of the platform and first floor of the building.

"Defendants bought milk from various farmers, including plaintiff, which was delivered in the ordinary commercial milk cans, hauled by the farmers to this outside platform and taken by them through the doorway in the west wall to the place where the milk was received.

"For some time, perhaps a year, plaintiff had delivered milk by unloading his cans onto the outside platform, and, after placing the cans and himself on the elevator, he would start the elevator downward, by giving the proper pull to the rope, and when the basement floor was reached the elevator would stop automatically, and the cans would then be taken off the elevator to the point in the basement where defendants received them. Plaintiff would then return to the first floor by getting upon the elevator and giving the rope the proper pull which would start the elevator upward and he would stop it at the first floor by pulling the control rope into the slot for that purpose. He made these deliveries and went over this route in this way daily.

"In the spring of 1922, defendant began receiving the milk somewhere in the interior of the building on the first floor, and access to the building from the platform was had through the above-mentioned doorway and across the elevator floor if it was at the first floor, or across the wire netting on its top if the elevator were in the basement. Plaintiff continued to deliver milk on the first floor in this way from the spring of 1922 until his injury which happened on August 31, 1922, at 8:30 in the morning.

"Plaintiff drove his team of horses to the platform and unloaded his two cans of milk thereon. He then

started to take them through the doorway into the building. He admits he was hurrying, because he was somewhat late, and a man had driven up behind his wagon and was waiting for him to get out of the way. Plaintiff says he picked up one can with his right hand and started into the doorway by opening one of the screen doors with his left, pushing the door around and holding it open, while he turned around and with his right started to swing the can into the elevator and stepped in, but the elevator was not there and he fell to the basement below, a distance of about twelve feet. He says as he turned to pick up the can with his right hand while holding the screen door open with his left, this placed him with his back to the elevator and his face toward the alley, and that in this position he stepped inside, not backwards, but 'sideways,' his right side going in first. He says he didn't know which way he was looking, whether to the north or west into the alley, nor whether he turned his head with his body; that he *didn't stop to see where the elevator was,* but simply grasped his milk can and *walked in there without looking.* He was asked:

" 'Q. You didn't stop to see where the elevator was? A. No, I never stopped to see where it was.

" 'Q. You simply grasped your milk can and simply walked in there? A. Yes, sir.

" 'Q. And without looking? A. Yes, sir.'

"He gave the size of the doorway and screen doors as above stated, and said that when he opened the screen doors there was nothing between the elevator and outdoors, and that he had to open the screen doors and hold them open in order to get inside.

"He was further asked:

" 'Q. Didn't you stop to look when you delivered milk there and started to walk in there? A. Not every time I didn't.

" 'Q. I mean this particular time? A. No, I didn't.

" 'Q. You didn't stop to look? A. No, I didn't.'

"He denied that, as he entered, his team was 'fixing to start off' and said his attention was not attracted to

his horses, but admitted that he was 'hurrying up to take my milk in' as he was 'mighty near late that morning.'

"The petition alleged the maintenance of the doorway and the elevator shaft and elevator as above described and charged that it had long been the custom and practice of defendants to keep said elevator either at the bottom of the shaft so that persons entering the doorway could walk over the top of the elevator, or to keep said elevator at the first floor so that such persons could walk through and across said elevator, and plaintiff and other sellers of milk had for a long time, at defendants' invitation, delivered their milk through said doorway and through or over said elevator in this way; that at all the times when plaintiff delivered milk to defendants through said doorway prior to his injury, said elevator was kept so that he could either walk over and across it or through it, and plaintiff, relying on that practice and custom, believed said elevator was so kept and maintained and in ·said position at the time he was hurt.

"The negligence charged was a failure to keep said building well lighted in and about said elevator shaft whereby persons entering said doorway could not well see said shaft or the location of said elevator; also that defendants, prior to the time of plaintiff's entrance, negligently removed the elevator from its usual and customary location, leaving the elevator shaft open from the doorway to the bottom, and negligently failed to prevent plaintiff and persons so entering said doorway from falling down through said elevator shaft, and negligently failed to warn plaintiff that the elevator had been removed from its customary location so that he could not walk over, across, or through said elevator when delivering milk as said.

"The answer contained a general denial and further averred that if plaintiff received any injuries, 'the same were caused solely and exclusively by his own negligence in carelessly and negligently stepping into said elevator shaft without first ascertaining or looking to see if said elevator was in place and without first ascertaining

whether or not he could cross said elevator or elevator shaft in safety; and defendants aver that the plaintiff knew or by the exercise of ordinary and reasonable care and caution on his part, could and should have known that said elevator at the time and place mentioned in plaintiff's petition was not even with the bottom of first floor of said building, but was at the second floor of said building and that said elevator shaft therefore could not be crossed by him.'

"At the close of the entire case, defendants offered a demurrer to the evidence, but this was overruled. Appellants contend this was reversible error.

"Respondent contends that contributory negligence was not pleaded, and, therefore, was not in the case. If contributory negligence, as a matter of law, appears in plaintiff's own evidence, then it would seem that this element would be in the case as a part of the law to be applied by the court regardless of whether it was formally pleaded or not. But we think that contributory negligence was charged. The answer does not merely content itself with saying generally that plaintiff's negligence caused the injury, but specifies what that negligence consisted of, namely, in stepping into the elevator shaft without looking to see whether the elevator was in place when by ordinary care he could have seen or known it was not there.

"There was nowhere in the record evidence of any assurance, or agreement, or promise, on the part of defendants that the elevator would be kept in position so that persons entering the doorway could pass through or over it, nor that if it were moved, a warning would be given. Nor is there evidence of a custom that said elevator was kept in said position for use in that way. Plaintiff does not testify to any such custom. All that he testified to in this regard was that when he delivered milk, the elevator was usually even with the first floor or else down at the bottom, in which case the top of the elevator would be two inches higher than the level of the platform and first floor of the building; that he

never saw the elevator up at the top floor and he 'never gave it a thought' whether the elevator did or did not run to the top floor, though he admitted that in coming up out of the basement on the elevator he knew he had to pull the control rope and put it into the slot in order to stop it at the first floor and he had done that a good many times, and said that he had done this daily for several months during the time the milk was being received in the basement. His own witness, Wilson, the only other witness plaintiff has as to the delivery of milk, said that a few times when he came with milk he found the elevator at the top floor; that he could see it up there and could see whether the elevator was above or whether it was even with the floor; and that when it was at the top floor there was nothing else to do but wait until it was lowered to the main floor. There was likewise evidence in defendants' behalf on the part of a farmer who sold milk there that sometimes the elevator was in the basement, sometimes at the top floor, about once a week it was up at the top floor. It was not always in position so it could be crossed, and when it was not it had to be called for and someone would bring it down. There was no proof of a custom to keep the elevator at the first floor during the hours when milk was being delivered, nor of any agreement or assurance that it would be kept there during those hours. Plaintiff's case was not submitted on any such custom to keep the elevator in place, for his instructions do not submit the issue of any such custom, but they merely told the jury that if it was the practice and custom of defendants to receive milk in the way we have heretofore described and the plaintiff and other persons, with the knowledge and consent of defendants, were in the habit of crossing over the top or through the elevator to make deliveries, and if to remove said elevator to the top of the shaft and permit it to remain there at or during the time when deliveries were made, rendered the elevator shaft at said door dangerous and unsafe, then it was negligence to remove said elevator to

the top of the shaft between said hours of seven and nine in the morning; and that if at a time of day when plaintiff and other persons were in the habit of making deliveries, defendants carelessly and negligently caused or suffered the elevator to be moved to the top of the shaft and such removal caused the elevator shaft at said doorway to be dangerous and unsafe, and defendants failed to warn plaintiff that said elevator had been moved, and plaintiff, while attempting to deliver milk, passed through the screen door intending to go upon and across said elevator and fell into the basement and was injured, then the verdict should be for the plaintiff.

"Assuming, but not deciding that it was negligent, under the circumstances, to move the elevator to the top floor at any time between the hours of seven and nine in the morning, the question remains whether plaintiff was not guilty of contributory negligence, as a matter of law, in thus opening the doors to the elevator shaft and entering without taking the least precaution to see whether the elevator was in place. He knew that an elevator shaft was just inside the doors; and since he knew this, the screen doors were guards or doors to the shaft the same as at any other elevator shaft. The mere fact that he had never seen the elevator at the top floor would not warrant him in assuming it would always be in place. He knew it was an elevator and he manifestly, knew it could go above the first floor because he says he knew it had to be stopped when it reached the first floor in coming out of the basement. Our attention has not been called to a case where recovery was allowed one, even an invitee, who approached an elevator's shaft knowing it to be such, and which was closed by means of guards or doors, and where he opened those doors and stepped into the shaft without taking even the slightest precaution to ascertain if the elevator were there. This was a guarded elevator shaft. It is for unguarded elevator shafts that the law makes the owner of a building liable for injuries to one who steps or falls therein. [29 Cyc. 469.] The weight of authority is that the owner

of a building and elevator is bound to use only ordinary and reasonable care and diligence to keep it safe, and is liable for injury to any person lawfully using it, 'who is himself guilty of no contributory negligence' occasioned by the want of ordinary care. [29 Cyc. 470.] To create a liability on the part of the owner of the building for injuries to one knowingly stepping into an elevator shaft the opening must have been insufficiently guarded, not properly lighted, or concealed, or it was otherwise difficult to see that the elevator was not there. 'Every person, whether a trespasser, licensee or one present by invitation, when using . . . or when in proximity to an elevator or its shaft, is bound to exercise reasonable care for his safety.' [9 R. C. L. 1257.] This authority further says that while an elevator is not, like a railroad track, a place of great danger to be approached with great caution, and when the door to an elevator shaft is open and one, in stepping into it, fails to see that the elevator is not there, the question of his contributory negligence must depend upon the circumstances of the particular case; yet that one cannot walk blindly through an elevator door, though if even a hasty and cursory examination would lead an ordinary prudent person to suppose the elevator is there, he is not necessarily negligent if he proceeds on that assumption. If the opening of the shaft is usually guarded, the absence of a guard may justify a person in thinking he is at the entrance to a place other than an elevator; if, however, 'the elevator door is only partly open, there is no assurance that the place is a safe one to enter, and a person who opens it entirely and passes through when the carriage is not at the floor is generally considered guilty of contributory negligence as a matter of law.' [9 R. C. L. 1258-9.]

"In the case at bar, the doors guarding the entrance to the elevator were closed and plaintiff, in a hurry, opened them and stepped in, knowing that an elevator shaft was there, but without taking even a glance to see whether it was there or not. He was guilty of contribu-

tory negligence. [Wheeler v. Hotel Stevens Co., 71 Wash. 142; Bremer v. Pleiss, 121 Wis. 61; Patterson v. Hemenway, 148 Mass. 95; Kappes v. Brown Shoe Co., 116 Mo. App. 154.]

"In Main v. Lehman, 243 S. W. 91, an invitee was not allowed to recover for falling over a step which she had passed over a short time before and knew to be there, although the place was dimly lighted, such invitee having the ability to make light available.

"There can be no claim that the case at bar is in any way bottomed upon an insufficiency of light. Plaintiff does not say that he failed to see that the elevator was not there because of a lack of light. He simply failed to look. He says the screen doors were five or six feet wide and seven feet high and that when he opened them there was nothing 'between the elevator and out-of-doors.' The injury happened on August 31st at 8:30 in the morning when it was broad daylight. That he could have easily seen if he had looked, is shown by the fact that when asked if he could readily see through the wire netting on the top of the elevator (when it was in the basement), he replied, 'You could if you would stop and look.' Plaintiff's own witness, Wilson, testified that when entering he could see what was in front of him and could see where the elevator was, and that when he came there to deliver milk, he looked to see where the elevator was. It is true, he said it was not as light on the inside of the elevator shaft as it was 'outdoors in the sunshine.' But this does not state that the shaft was not lighted enough to reveal the presence or absence of the elevator, and the physical facts as well as the testimony shows that it was a failure to look and not a lack of light that caused plaintiff's injury. And the case was not submitted on any theory of a lack of sufficient light, but upon the theory that as defendants knew the men were in the habit of delivering milk through or over the elevators, it was negligence to move the latter, and that too without regard to whether the entrance to the elevator shaft was

guarded and closed by wire screen doors which had to be opened before an entrance could be had.

"The cases cited by respondent as showing that plaintiff was not guilty of contributory negligence as a matter of law do not appear to be applicable. In Langan v. St. Louis Ry. Co., 72 Mo. 392, plaintiff was hurt while carrying a trunk along a platform by a train coming up suddenly behind, but which was not in sight only a moment before. In Crawford v. Kansas City Stock Yards, ·215 Mo. 394, the plaintiff, while riding in a car which was passing a gate which the stock yards negligently allowed to open outward, was struck and injured by the protruding gate. In Baldwin v. Coffee Co., 202 Mo. App. 650, the plaintiff went down in an elevator to a basement and stepped out of it, leaving it open for only a minute and returned having no reason to think it was gone and stepped into the empty shaft. There was an insufficiency of light and the circumstances were such that it could not be said the plaintiff was conclusively negligent because he thought the elevator was there. In that case, a basement light could be relied upon to shine when the elevator was not there, but it failed to burn at this time.

"It is no doubt true that negligence is not imputable to a person for failing to look out for danger where, under the surrounding circumstances, he had no reason to suspect any; but, as we view it, such principle is not applicable to the plaintiff's case. He knew an elevator shaft was in the doorway, that an elevator was used in it, and that in going up, it had to be stopped at the first floor. The place was light enough for him to see if he had looked, but, without looking, he opened the screen door and carelessly stepped in. We think he was conclusively negligent.

"Point is made by plaintiff that since defendants did not demur to the evidence at the close of plaintiff's case, but waited until the close of all the evidence and then demurred, such demurrer is not available now, since they asked instructions after the demurrer was overruled. We do not understand such to be the law. [Kenefick-

Hammond Co. v. Fire Ins. Society, 205 Mo. l. c. 312.] Even if defendants had demurred at the close of the plaintiff's case, yet such would have been waived by putting on their own evidence, and, on their appeal, the correctness of the trial court's ruling on their demurrer at the close of the whole case is the open question and that depends upon the whole evidence. [Frye v. St. Louis Ry. Co., 200 Mo. 377; Riley v. O'Kelly, 250 Mo. l. c. 660. See also Cullen v. Atchison Co., 268 S. W. l. c. 95.]

"There are other questions raised as to the correctness of instructions given for plaintiff and the refusal of instructions for defendants, but they need not be considered in the view we entertain that plaintiff is not entitled to recover.

"The judgment is reversed. All concur."

I.   It is contended by relator that the ruling of the Court of Appeals in holding that plaintiff, William H. Cox, at the time and place of accident, was guilty of contributory negligence which precluded a recovery, is in conflict with Crawford v. Kansas City Stockyards Co., 215 Mo. 395, 414; Langan v. Railroad, 72 Mo. 392, 398; Cox v. American Steam Laundry Co., 267 S. W. (Mo. App.) 77, and Barr v. City of Kansas, 105 Mo. 551.

*Contributory Negligence: Conflict.*

The case of Cox v. American Steam Laundry Company was decided by the St. Louis Court of Appeals, which is not an authority in passing upon a *certiorari* proceeding against another Court of Appeals. [State ex rel. Packing Co. v. Reynolds, 287 Mo. l. c. 710.] The other three cases were appealed from the circuit courts directly to this court where they were considered on the merits. We will consider the same in the order presented.

In Crawford v. Stockyards, 215 Mo. 394, supra, the plaintiff was injured by a gate which was left open through the negligence of defendant, as he was leaving the car where he had been looking after his cattle. VALLIANT, J., on page 406, said: "According to plaintiff's testimony he was on the platform watching for his cars,

observing the cattle in the cars as they passed him, and when his cars came in view, seeing that some of the cattle of which he had charge had fallen down, he got into the car to help them up and while in the act of climbing out of the car was struck by one of the gates which was open,'' etc. It was held, that defendant was negligent in permitting the gate to stand open, and that plaintiff did not know it was open. On page 414, Judge VALLIANT said: ''There is nothing in the evidence to indicate that plaintiff had any reason to anticipate that these gates might be open. It was contrary to the usual course of operation, in the stockyards; nothing of the kind is shown to have ever occurred before, and it could occur only through the negligence of defendant,'' etc.

A clear distinction between the cases is pointed out by Judge TRIMBLE, as follows: ''In the case at bar, the doors guarding the entrance to the elevator were closed, and plaintiff opened them and stepped in, knowing that an elevator shaft was there, but without taking even a glance to see whether it was there or not. He was guilty of contributory negligence.''

The facts in the Crawford case were unlike those at bar. It was not an elevator case, nor did plaintiff open the gate. While in the case before us the plaintiff, with full knowledge of the surroundings and conditions, opened the doors himself, and stepped in without even a glance to ascertain whether it was safe to go forward. We are of the opinion that there is no conflict between the opinions of Judges VALLIANT and TRIMBLE.

The case of Langan v. Railroad, 72 Mo. 392, was not an elevator case, and the facts were entirely different from those in the present case. The plaintiff, while assisting in carrying a trunk along the depot platform, with his back to the train, was injured by the bumper of the engine, which approached without any warning. It was held that plaintiff had no reason to suspect that danger was to be apprehended, and his negligence was a question for the jury. There is no conflict between the decision in the Langan case, and the law as declared in

Judge TRIMBLE's opinion on an entirely different state of facts.

In Barr v. City of Kansas, 105 Mo. 551, the plaintiff was running in one direction while looking in another, and stepped into an open sewer, left there through the negligence of the city, and of which she had no previous knowledge. The controversy in the case was over the instructions relating to plaintiff's negligence, and not in respect to a demurrer to the evidence. The facts are clearly different from those before us, and there is no conflict between the rulings in each case.

We are of the opinion, that the cases cited by relator, as to their facts, are entirely unlike those at bar. Hence, it cannot be said, that the ruling of Judge TRIMBLE in sustaining a demurrer to the evidence under the facts disclosed in his opinion, is in conflict with any of the cases cited by relator.

II. The Court of Appeals had jurisdiction over the subject-matter in the above case, and likewise over the parties thereto. As long as said court promulgated no rule of law which could be said to conflict with a former ruling of this court on the same or similar facts, it had the inherent right to determine the issues involved, whether its rulings be right or wrong. [Howland v. Ry. Co., 134 Mo. l. c. 479, 36 S. W. 29; Garey v. Jackson, 184 S. W. l. c. 982; State ex rel. v. Farrington, 195 S. W. 1044; Lavelle v. Ins. Co., 231 S. W. l. c. 618; State ex rel. v. Allen, 256 S. W. l. c. 1052; State ex rel. v. Cox, 268 S. W. l. c. 90; State ex rel. Raleigh Inv. Co. v. Allen, 294 Mo. l. c. 220; State ex rel. Vogt v. Reynolds, 295 Mo. l. c. 396.] Before the opinion of the Court of Appeals, in sustaining a demurrer to the evidence, can be legally quashed by this court on *certiorari,* it would have to appear affirmatively from the record, that the opinion of said court is in conflict with some designated opinion of this court, based on similar facts.

*Certiorari.*

III. According to our conception of the law, there is no necessity for pursuing this inquiry further. We

find that there is no conflict between any of the decisions cited by relator, and the ruling of Judge TRIMBLE heretofore mentioned.   On the contrary, we are of the opinion that the case was properly disposed of by the Kansas City Court of Appeals on the merits, in a well-considered opinion.

We accordingly hold, that our writ of *certiorari* was improvidently issued, and should be quashed.   So ordered.   *Higbee, C.,* not sitting.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court.   All of the judges concur.