GILBERT *v.* FEDERAL LIFE INSURANCE CO.

1. INSURANCE—ACCIDENT POLICY—CAUSAL CONNECTION—WRECKING
VEHICLE.

Where accident policy provides indemnity for death or injuries
caused to insured by wrecking or disablement of any vehicle,
there must exist causal connection between wrecking or disable-
ment of vehicle and accident to bring it within terms of policy.

2. SAME.

Where wagon was driven by insured into barn so that standard
permanently attached to hayrack projected above floor of loft
and prevented wagon from going further forward, and horses
hitched to wagon started, broke standard, and insured was
thrown from wagon and killed, his death was not caused by
wrecking or disablement of wagon within terms of policy in-
suring against accident caused by wrecking or disablement of
any vehicle, but was caused by starting of horses, and there-
fore insurer is not liable under terms of policy.

SHARPE, FEAD, and BUTZEL, JJ., dissenting.

Appeal from Kalamazoo; Weimer (George V.), J.
Submitted October 9, 1931. (Docket No. 65, Cal-
endar No. 35,959.) Decided March 2, 1932.

Assumpsit by Julia Gilbert, as beneficiary, against
Federal Life Insurance Company, an Illinois corpo-
ration, on an accident insurance policy. Directed
verdict and judgment for plaintiff. Defendant ap-
peals. Reversed.

*Clair S. Beebe,* for plaintiff.

*Howard, Kimball & Howard (Jerome F. Kutak,*
of counsel), for defendant.

Butzel, J. (*dissenting*).  Julia Gilbert, plaintiff, beneficiary under an accident policy issued to Fred J. Stute, her brother, recovered a judgment on a directed verdict against the insurer, Federal Life Insurance Company, defendant.  The policy was issued to Stute as a premium on a $2 subscription to the Michigan Farmer.  The following clause of the policy is pertinent to the issue in the instant case:

"Part 3.  *Automobile and Specified Farm Machinery Accidents.*

"(a)  For loss of life, both hands or both feet, sight of both eyes or one hand and one foot, sight of one eye and one hand or sight of one eye and one foot resulting, exclusively of all other causes as a direct consequence of the wrecking or disablement of any vehicle, operated by any private carrier or private person, in which the insured is riding, or resulting as a direct consequence of being thrown from such wrecked or disabled vehicle, the company will pay the sum of $2,000.00.  *   *   *

"The word 'vehicle,' as used in this part, shall mean a wheeled conveyance, horse drawn or motor propelled, and no other.  As to all persons engaged in farming, this part shall cover as vehicles all tractors, farm wagons, mowers, binders, sulky plows, sulky cultivators and other farm machinery which is designed to be ridden upon while in use."

On September 4, 1930, while the policy was in force, Stute met with a fatal accident.  Accompanied by Louis J. Gilbert, plaintiff's husband, he drove a farm wagon equipped with a hayrack to a cornfield to collect a load of cornstalks and store them in Gilbert's barn.  There was a permanent standard firmly attached to the front end of the wagon.  It was a part of the wagon and used as a binding pole or stanchion against which to pile the load.  It consisted of two upright timbers, to which were at-

tached three crosspieces of the width of the wagon. After a light load, about four feet high, was piled on the wagon and against the standard, Stute drove the team with the wagon into Gilbert's barn through the north doorway. The wagon came to a stop when it was brought to a position where the standard was flush with, and extended about two feet above, the floor of the loft or scaffold of the barn. This loft extended across the south end of the barn. The wagon was thus brought as far as it could go, and the standard acted as a brake or block against the floor of the loft so as to prevent the wagon from being moved further forward. There was also a doorway on the south side of the barn, but only the north entrance could be used, because the loft at the south side would prevent a sufficient clearance for the standard. When the wagon came to a standstill, the reins of the horses were wound around the standard, and Gilbert went into the loft to pile up the cornstalks as they were thrown to him by Stute. The latter took a position on the wagon about four or five feet to the rear of the standard and faced the west. Immediately after pitching the first bundle of cornstalks to the loft, the team started forward, and in so doing broke the standard of the wagon to pieces, dashed out of the doorway a short distance and then halted. Stute was heard to exclaim "Whoa." He was found doubled up and lying on his right side on the cement floor of the areaway in the barn, about eight feet back from the scaffold. He had sustained injuries to the right side of his body and a fracture of the skull on the right side. He died five days later without regaining consciousness.

The testimony shows that the standard was part of the horsedrawn vehicle, and, therefore, there was

a disablement of the vehicle within the terms of the policy. The recognized meaning of the word "disabled," as defined by the lexicographers, is to "detract from the value of or impair." He was riding in a farm vehicle when he was standing on the floor of the wagon, and it was being drawn by horses. He was thrown from a disabled vehicle, and the natural inference from the facts as presented is that the breaking of the standard permitted the wagon to go forward, and resulted in a sudden start that caused decedent's fall. Defendant contends that plaintiff fell prior to the disablement of the wagon. Were it not for the fact that the standard of the wagon could not have been moved forward without breaking the standard, there would be force in its argument. In the case of *Kimbrough* v. *National Protective Ins. Ass'n* (Mo. App.), 35 S. W. (2d) 654, where plaintiff brought suit on an indemnity policy on account of injuries sustained as a result of an automobile collision, and the wording of the policy was somewhat similar to the hereinbefore quoted clause, the court said:

"Examining the words of this clause as they are written and giving them the meaning that would be attributed to them by one of ordinary understanding, we may reasonably say that the insured would be led to believe that he purchased indemnity against injury arising from an automobile collision while riding in a car, or during the time of an automobile collision, or when he was accidentally thrown from within the car at such time. * * * No one would anticipate being thrown from within an automobile after it is wrecked or disabled, but would naturally anticipate that he might be so thrown through the means, or during the time, of any occurrence, such as a collision in which the car is wrecked or disabled."

In *Sant* v. *Continental Life Ins. Co.,* 49 Idaho, 691, 694 (291 Pac. 1072), insured had also a limited policy issued to readers of newspapers. It contained an indemnity clause somewhat similar to part 3 of the policy in the instant case. He was riding on the rear of a platform of a horse-drawn grader, the blade of which struck a stone or rock and was bent thereby, and the side of the vehicle was also sprained. The court, in holding that the insured was "in" the grader as much as one could be, that it was disabled to some extent and was not wrecked, said:

"Though the evidence as to the accident was circumstantial, the conclusion that at the time of the accident the deceased was riding in a vehicle and was thrown therefrom is not a presumption on a presumption, but a legitimate deduction from such circumstantial evidence. Construing the provision of the policy under consideration most favorably to the insured, the evidence, there being no conflict therein whatever, clearly justified the court in instructing a verdict for the plaintiff on the basis that at the time of the accident, the grader was being used as a vehicle and the deceased was accidentally thrown from the same when it was disabled."

In *Inter-Southern Life Ins. Co.* v. *Bowyer,* 90 Ind. App. 494 (169 N. E. 65), the insured was riding upon the tailgate of a parcel post delivery truck, when the chain of the tailgate broke and he was thrown to the ground and killed. Under a similarly worded policy, the court held that the truck was disabled, inasmuch as there was an impairment, notwithstanding the fact that the breaking down of the tailgate did not render the truck incapable of action or use. In *Yoshie Maeda* v. *Sierra Nevada Life & Casualty Co.,* 109 Cal. App. 271 (292 Pac. 987), under a simi-

larly worded policy, defective brakes failed to prevent an automobile from sliding off a boat, with the result that the insured was drowned. The court stated:

"Adopting, as we are required to do, a liberal construction of the policy, our conclusion is that, at the time of the accident, there was a 'disablement' of the automobile due to the defective condition of the brakes, as this term is used in the policy before us."

In *Guaranty Trust Co.* v. *Continental Life Ins. Co.,* 159 Wash. 683 (294 Pac. 585), suit again was brought on a policy issued in conjunction with a magazine and containing a somewhat similar clause to part 3 of the policy in the instant case. The insured stood on the running board of an automobile and was thrown therefrom. The court, in holding the defendant liable under the policy, stated:

"Respondent also attaches some importance to the fact that, since Briscoe was riding on the running board and not inside of the truck, he was not within the terms of the policy. It could not be successfully contended that, had Briscoe been seated inside the truck, and when Campbell started to stop it to let him get out, had Briscoe then stepped out on the running board and immediately been thrown to the ground and killed, or so incapacitated that the truck instantly ran over him and killed him, he would not have been within the terms of the policy.

"We are not seriously impressed with so technical a contention. Again the principle should apply that, if two or more constructions can be placed upon a single word such as 'in,' that construction should be adopted most favorable to the insured. The word 'in' is ordinarily accepted and used as an equivalent to the word 'on.' 4 Words and Phrases

(1st series), p. 3464; *Andrews* v. *State,* 8 Ga. App. 700 (70 S. E. 111); *Depue* v. *Travelers' Ins. Co.,* 166 Fed. 183; *Ætna Life Ins. Co.* v. *Davis,* 112 C. C. A. 87 (191 Fed. 343); *Wilmarth* v. *Pacific Mutual Life Ins. Co.,* 168 Cal. 536 (143 Pac. 780, Ann. Cas. 1915 B, 1120); *Continental Life Ins. Co.* v. *Wilson,* 36 Ga. App. 540 (137 S. E. 403).

"In the last-cited case, based upon a similar contract of insurance with the one at bar, the insured was thrown from a log cart on which he was riding, which struck a stump in the road, throwing him out and dislodging a log which fell upon him. The court held that the insured was 'within' the vehicle in the sense of the terms of the policy, reasonably construed."

The policy was not worded so as to exclude liability under the facts and circumstances of the instant case. While some uncertainty may arise on account of its wording, its provisions are sufficiently broad so as to establish liability. It has been frequently held in this State that a contract of insurance prepared by an insurance company will be liberally construed in favor of insured. *Lower* v. *Muskegon Heights Co-Op. Dairy Co.,* 251 Mich. 450; *Patterson* v. *Miller,* 249 Mich. 89; *Birgbauer* v. *Ætna Casualty & Surety Co.,* 251 Mich. 614.

The judgment in favor of plaintiff should be affirmed, with costs.

SHARPE and FEAD, JJ., concurred with BUTZEL, J.

WIEST, J. I do not think that the accident happened by reason of the wrecking or disablement of the wagon. Such a standard on a farm wagon serves a useful purpose in holding a load, but not in holding horses, even when the standard is against a scaffold above the driveway in a barn. The starting

of the horses caused the deceased to fall from the wagon, and the breaking of the standard had nothing to do with the accident unless the standard, under the circumstances here disclosed, be considered a brake upon movement of the horses. There must exist causal connection between the wrecking or disablement of a wagon and the accident to come within the terms of the policy. Here was none, unless service be exacted of the standard never intended or even thought of by any farmer or user of such a device.

There is reversal of the judgment and no new trial.

CLARK, C. J., and McDONALD, POTTER, and NORTH, JJ., concurred with WIEST, J.