MARY ALICE BOLES, Appellee, v. ROYAL UNION LIFE INSURANCE COMPANY, Appellant.

No. 42413.

NOVEMBER 20, 1934.

REHEARING DENIED APRIL 5, 1935.

Cosson & Cosson and Cross & Hamill, for appellant.

Campbell & Campbell, for appellee.

DONEGAN, J.—Hotel Maytag in the city of Newton, Iowa, is a five-story building above the basement. In this hotel, opening off the northwest portion of the main lobby, is a passenger elevator. Near the east side of the building is another elevator commonly known as the freight elevator, which could be entered from the inside of the building by passing through a hallway and two intervening doors between such elevator and lobby. This elevator could also be entered from the outside of the building through a steel door which rolled up at the top and which opened upon an alley running along the east side of the building. The opening covered by this door was about five feet wide and about seven feet high, and the bottom of the opening was about sixteen inches above the surface of the alley. The platform of the freight elevator was about five feet wide and ten feet long and operated in a shaft which extended about sixteen feet below the bottom of the outside door. There were no doors on the elevator car itself. The shaft was protected by walls built around it on each floor, and on each floor there was a door opening onto the west end of the elevator. These doors parted midway between the top and bottom, and when opened the lower half slid down and the upper half slid up. The elevator was operated by automatic control. As originally built, both the inside doors and the outside door leading to the alley were equipped with what is known as circuit breakers, and if any one of these doors was open the elevator could not be moved. When all these doors were closed, the elevator was moved by push buttons upon each floor, a call button bringing the elevator from the floor on which it was located to the floor upon which the call button was pushed, and buttons inside the elevator automatically controlling the starting and stopping of the elevator at the floor at which it was desired that it be stopped. Prior to the time of the accident in question the circuit breaker on the outside door opening on the alley had been dis-

mantled, so that the elevator could be operated even when the outside steel door was open.

On the 9th day of January, 1932, the deceased, Charles W. Boles, an electrical contractor, was engaged in installing a conduit and fixtures in a room on the fourth floor of the hotel, under a contract by which he supplied all material and performed all labor for a stipulated price. Working in the same room, but on an entirely separate contract, was a man named Lynch, who was engaged in painting. Both Boles and those who were doing the painting made use of the freight elevator, entering the same from the outside alley and bringing their equipment back and forth by means thereof. About 9:30 in the evening Boles left the room in which he was working for the purpose of going to his shop to secure an extension cord and switch plate. He left his shop to return to the hotel about 10 minutes to 10. About 10 o'clock or a little earlier the painter, Lynch, desiring to get a glass from the basement, pushed the button of the elevator on the fourth floor in order to bring the elevator up to that floor. When he pushed the button the elevator seemed to hesitate. He then heard a sound like the closing of the door, and upon pushing the button again the elevator rose to the fourth floor. Lynch then went down in the elevator to the first floor and found the door to the alley open about three feet from the bottom, and pulled it almost clear down to not more than and probably less than six inches from the bottom. After getting a glass from the basement, he again entered the elevator and ascended to the fourth floor. About 10:30 the engineer, who was then in the basement, heard what sounded like some one moaning, and upon investigation Boles was found lying in the pit suffering from injuries and shock from which he died on the following day.

Boles was insured under two separate policies in the Royal Union Life Insurance Company. Each of these policies was for $1,000, and contained a provision for double indemnity if death resulted from accident sustained while the insured "is a passenger and is within a passenger elevator (mine elevators excepted)." The insurance company admitted its liability for $1,000 on each of the policies, but denied liability under the double indemnity provision. This action was brought by the widow of Boles, as the beneficiary named in the policies, to enforce the payment of the double indemnity. From a verdict and judgment in favor of plaintiff, the defendant appeals.

I. The first error relied upon by the defendant for reversal is that the court erred in failing to sustain defendant's motion to direct a verdict in its favor, for the reason that the plaintiff failed to prove that the insured died as a result of injuries sustained while he was a passenger within a passenger elevator.

Appellant contends that the insured in this case was not a passenger in a passenger elevator, because he was an independent contractor; because the elevator in question was not a passenger elevator; and because the evidence fails to show that he was in or upon the car of the elevator at the time the accident occurred.

It is undisputed that Boles was an independent contractor. In support of the contention that an independent contractor cannot be a passenger, appellant cites Travelers Insurance Co. v. Austin, 116 Ga. 264, 42 S. E. 522, 59 L. R. A. 107, 94 Am. St. Rep. 125; Wood v. General Accident Insurance Co. of Philadelphia, 160 F. 926, 927 (C. C. A.); Bogart v. Standard Life & Accident Insurance Co., 187 F. 851 (C. C. A.); Johnson v. Lincoln Hotel Co., 189 Iowa 291, 177 N. W. 550.

In Travelers Insurance Co. v. Austin, there was involved a provision authorizing recovery if the insured were injured while riding as a passenger in or upon any railway passenger car. The insured was a paymaster of the railway company riding in a remodeled Pullman car which was used as a pay car, and the decision turned upon the fact that the car, as thus remodeled and used, was not a passenger car, and not upon the question as to whether the paymaster was an independent contractor.

In Wood v. General Accident Insurance Co. of Philadelphia, the insured, a railway mail clerk, was riding in a mail car of a moving train when injured. The policy contained a provision as to injuries received "while actually riding as a passenger in or on any regular passenger conveyance provided by a common carrier," and again the decision turned, not on the fact that the mail clerk was an independent contractor, but upon the fact that "a mail clerk at work in a mail car is not, in common apprehension, 'actually riding as a passenger in or on any regular passenger conveyance'."

In Bogart v. Standard Life & Accident Insurance Co., there was involved a railway mail clerk riding in a railway mail car. The provision of the insurance policy was for indemnity "while riding as a passenger and being in or on any railway passenger car propelled

by mechanical power provided by a common carrier for passenger service," and the court said:

"The insurance of a passenger while riding on a railway passenger car provided for passenger service is one thing; the insurance of a railway mail clerk while in the discharge of his official duties in a mail car on a moving train is an entirely different thing."

In Johnson v. Lincoln Hotel Co., the insured was a guest at the hotel and was injured by falling down the shaft of an elevator. The action was brought on the ground of negligence, and the decision turned on the fact that none of the grounds of negligence which were specifically alleged was proved, and the question of an independent contractor was in no way involved.

We find nothing in any of the cases cited by appellant that to our mind would prevent the insured from being a passenger because of the fact that he was an independent contractor. If the insured, in the instant case, although an independent contractor, had gone back and forth to his work by means of the regular passenger elevator, we know of nothing in any of the cases which would prevent him from being a passenger. And, if such passenger elevator, instead of being in charge of an operator supplied by the hotel, had been of the automatic type and operated by persons using the same, we can see no reason why the fact that the insured was an independent contractor would prevent him from being a passenger if such elevator was operated by him in the same manner as by other passengers. This brings us to a consideration of the next question raised by the appellant, viz., was the elevator in question a passenger elevator within the contemplation of the parties to the contract in the insurance policy?

■ It is the contention of the appellant that the clause of the insurance policy, providing for double indemnity if the death of the insured resulted from an accident while he was a passenger and within a passenger elevator, had reference to and was understood by the parties to mean an elevator of such size, type, equipment, and construction as is generally and commonly known as a passenger elevator, as distinguished from the type of elevator which, because of its size, equipment, and construction is generally and commonly known as a freight elevator; that it is generally and commonly known that the type known as freight elevator does not have safety devices and is not constructed and operated with a view to

the care and safety of passengers; that the nominal amount of the additional premium charged for double indemnity clearly indicates that such double indemnity was to be limited to injuries received in the type of elevator known as passenger elevators; that the fact that what is generally and commonly known as a freight elevator may sometimes be used for the service of passengers does not make such elevator a passenger elevator, such as was within the contemplation of the parties to the insurance contract; that the elevator in question in this case was of such a general type, size, equipment, finish, and construction that it was a freight elevator; and that the trial court should have so held, as a matter of law.

Appellee challenges this contention of the appellant and urges that the ordinary and reasonable meaning of the language used in the policy does not support such a construction, and that the language itself shows that even the insurer had in mind that freight elevators may be considered as passenger elevators when used for that purpose. The clause of the policies here involved contained the further provision—"mine elevators excepted". Appellee argues that it is well known that there are no elevators of the type known as passenger elevators in mines and that, by the exception contained in the policies, it is quite evident that the parties had in mind that the double indemnity clause would apply to elevators used for passengers even when such elevators were of the type known as freight elevators, except in the case of mine elevators.

It seems to us that the cases in which this precise question has been involved support the contention of the appellee. The principal case upon which appellee relies, and apparently the case by which the trial court was guided, is Wilmarth v. Pacific Mutual Life Insurance Co., 168 Cal. 536, 143 P. 780, 782, Ann. Cas. 1915B, 1120. In that case the insured was killed by falling from an elevator in a building used in conducting the business of selling automobiles, etc. The policy provided for double indemnity for injuries sustained by the insured while in a passenger elevator (excluding elevators in mines). The elevator in question was one which, because of its size, construction, equipment, etc., might be called a freight elevator. The evidence showed it had frequently been used in conveying passengers. The defendant asked the following instruction: "I instruct you that an elevator designed and constructed for the purpose of carrying freight and used in the carriage of freight, although the same may at times be used for the carriage of passengers, is not

a passenger elevator within the meaning of the policy of insurance referred to in the pleadings and evidence in this case," and alleged error because the trial court refused to-give the same. The case was submitted to a jury which returned a verdict in favor of the plaintiff. In sustaining the lower court, the supreme court said:

"Appellant contends that the purpose which the insurer had in mind was to offer double indemnity for accidents suffered in elevators devoted to the carriage of passengers exclusively, because such elevators are commonly more carefully safeguarded than those used for the moving of freight, and that the chances of accidents from their operation are very slight. The answer to this position of appellant is that if the insurer had intended such a limitation upon the term 'passenger elevator' it would have been very easy to express the exact meaning desired. But, counsel for defendant assert there is a complete analogy between the terms 'freight car' and 'passenger car' and the expressions 'freight elevator' and 'passenger elevator.' * * * There are two objections to this argument. One is that types of elevators are not crystallized in the mind like types of cars, and the other is that the only reason for associating the terms 'freight car' and 'passenger car' with definite forms of construction is that customarily the types named are devoted to the one or the other purpose of carrying merchandise or persons so that after all it is the customary use of the car which gives each term definite outline in the mind. While there are many elevators devoted exclusively to the carriage of passengers and many to the moving of merchandise only, there are very many used for both purposes. * * * But even if we were to accept an analogy between elevators and trains, such an elevator as we are here discussing would be quite similar to a 'mixed train' which is recognized as a 'passenger train'." (Citing cases.)

Appellant relies on the language used by the court in Losie v. Royal Indemnity Co., 183 App. Div. 744, 171 N. Y. S. 174. In that case the policy contained a provision for double indemnity "if the injury to the insured be sustained while riding as a passenger in a passenger elevator". It will be noted that this provision is practically identical with the provisions of the policies involved in the case at bar. In the Losie case, the insured had driven his automobile into an elevator in a garage, and while seated in his automobile had been hoisted to the second floor, where he backed his car off the

elevator into the space reserved for storage. Upon request of the insured, he was allowed to ride down on the elevator with the attendant, and, before reaching the first floor he stepped off the elevator and received injuries which resulted in his death. The trial court admitted evidence showing the size and construction of the elevator as well as the uses made of it, and submitted to the jury the question whether the elevator was a passenger elevator within the meaning of the provision contained in the policy of insurance. The jury found that the elevator was not a passenger elevator, and from a judgment in favor of the defendant the plaintiff appealed. Upon such appeal the appellant contended that the use to which the elevator was put alone determined, as a matter of law, whether it was a passenger or a freight elevator; and that the evidence having shown that it was commonly used for transporting persons it should be held, as a matter of law, to be a passenger elevator. In sustaining the judgment of the lower court the appellate court said:

"Under the construction that the use alone fixes the character of the elevator, the use of the most rudely and dangerously constructed hoist, without protection of any kind, and designed to carry sand and gravel or the roughest sort of building material, might if frequently used by persons, even wholly without the knowledge of the insurer, bind it to liability for accidental injury as being a passenger elevator. Plainly the manner of construction of the elevator was also, as the respondent claims, an important factor in determining the character of the elevator. The open front of this elevator was a necessary feature of its construction in order that automobiles might be run on and off unobstructed. Otherwise it could not properly perform its function in a garage of this character."

It will be noted in the Losie case that, while the appellate court rejected the contention of appellant that use alone determines whether an elevator is a passenger or a freight elevator, it sustained the trial court in submitting to the jury both the use and the construction of the elevator as matters to be considered in determining that question.

In addition to the Losie case, appellant cites Hall v. Murdock, 114 Mich. 233, 72 N. W. 150, and State v. Trimble, 312 Mo. 322, 279 S. W. 60, in support of the contention that the use of a freight elevator for the transportation of passengers does not make such

elevator a passenger elevator. Neither of these cases involved the construction of a provision in a policy of insurance. On the other hand, both the cases of Wilmarth v. Pacific Life Insurance Co. and Losie v. Royal Indemnity Co., from which we have quoted above, were actions on provisions of insurance policies similar to the provisions of the policies here involved, and in both of them the question as to whether what is commonly known as a freight elevator may be construed to be a passenger elevator was a determining factor. In the case at bar there was evidence that the elevator was used for transporting passengers, and in view of the fact that in both the Wilmarth and Losie cases it was held that the question as to whether the elevator was a passenger elevator was one to be determined by the jury from the evidence, we are constrained to hold that there was no error on the part of the trial court in refusing to hold, as a matter of law, that the elevator in question was a freight elevator.

As a further ground of error upon the part of the trial court in overruling defendant's motion for a directed verdict, the appellant contends that the evidence failed to show that the insured was in the elevator, that it clearly showed that he fell into the elevator shaft, and that, therefore, the relation of passenger never existed. No one saw the insured in the elevator at the time the accident occurred, and the only evidence as to that fact is circumstantial.

Appellant contends that the circumstances relied upon by appellee to establish the theory that the insured had entered the elevator and was crushed between the elevator platform and the steel door and upper portion of the brick wall inclosing the door opening are not sufficient to establish such theory, and utterly fail to show that such theory is even as probable as the theory that the insured fell into the elevator pit without having entered upon the elevator platform. It seems to be conceded, and the facts and circumstances are such that there can be no question, that, if the insured was not on the elevator platform, he did, in any event, fall into the elevator pit from the alley door while intending to enter the elevator. We are inclined to accept appellant's contention that the circumstances upon which appellee's theory of the accident is based are not sufficient to establish such theory as against the possibility or even probability that the insured fell into the pit without having entered upon the car of the elevator. It is contended by the appellee, how-

ever, that, even if the insured did not enter upon the car of the elevator, he was "within the elevator," as contemplated in the provisions of the insurance policies, when he opened the door intending to enter the elevator and fell into the pit. Appellee cites several cases in support of this contention. All of these cases involve the construction of clauses in insurance policies as between the insurer and the insured, and we think they lend support to the appellee's contention that in such cases the provisions of insurance policies are to be construed most strongly against the insurer, and that the strict technical rules which apply in cases between passengers and carriers are not controlling. In Aschenbrenner v. U. S. F. &. G. Co., 292 U. S. 80, 54 S. Ct. 590, 78 L. Ed. 1137, it is said:

"The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policyholder who is often without technical training, and who rarely accepts it with a lawyer at his elbow. So if its language is reasonably open to two constructions, that more favorable to the insured will be adopted; * * * and unless it is obvious that the words are intended to be used in their technical connotation they will be given the meaning that common speech imports. * * *

"We think the word 'passenger' cannot be restricted to the technical meaning which may be assigned to it by the law of common carriers, for it also has a common or popular meaning. * * * "

See, also, Losie v. Royal Indemnity Co., 183 App. Div. 744, 171 N. Y. S. 174; Gilbert v. Federal Life Ins. Co., 257 Mich. 205, 241 N. W. 150; Aetna Life Ins. Co. v. Vandecar (C. C. A.) 86 F. 282; Aetna Life Ins. Co. v. Davis (C. C. A.) 191 F. 343; Fidelity, etc., Co. of New York v. Morrison, 129 Ill. App. 360; Reynolds v. Life & Casualty Ins. Co., 166 S. C. 214, 164 S. E. 602; Stewart v. North American Accident Ins. Co. (Mo. App.) 33 S. W. (2d) 1005; Guaranty Trust Co. v. Continental Life Ins. Co., 159 Wash. 683, 294 P. 585; London Guarantee & Accident Co. v. Ladd (C. C. A.) 299 F. 562.

The case of London Guarantee & Accident Co. v. Ladd, supra, is the only case cited, and the only case we have been able to find, in which the precise question involved in the case at bar has been determined. That case was consolidated with Preferred Acc. Ins. Co. of New York v. Ladd and tried as one action. These actions involved double indemnity provisions in contracts of insurance issued

by the respective defendants. In one policy the provision was that double indemnity would be paid if the insured was injured "while riding as a passenger in a car intended for the use of passengers, and being in or upon any passenger car on a railway using steam, cable, or electricity as a motive power, or in a passenger elevator." In the other policy the provision was that double indemnity would be paid if injuries were sustained by the insured "while a passenger and is within a passenger elevator (elevators in mines excepted)." The insured received injuries resulting in his death by falling down an elevator shaft in an apartment house. The elevator was of the automatic style intended to be operated by passengers. The moving platform itself had no door. There were no eyewitnesses to the accident. The insured was found at the bottom of the shaft. The carriage was found standing at the second floor, and the door of the shaft on the first floor was found to be open. The trial court directed a verdict in favor of the plaintiff on both policies. The Circuit Court of Appeals reversed the trial court as to the first policy in which the provision contained the words "while riding as a passenger * * * in a passenger elevator", and held that as to such provision the term "passenger elevator", as there used, could not be held to refer to more than the car or carriage. As to the second policy in which the provision was "while a passenger and is within a passenger elevator (elevators in mines excepted)," the Circuit Court of Appeals sustained the trial court. In its discussion the court said:

"It has been urged that the usual rules of interpretation of the language of an insurance policy most strongly against the company should not apply to a double indemnity clause. Although it is true that the social consequences of excluding the beneficiary from any recovery may be much graver than merely excluding him from the double indemnity benefits, and in a sense the double indemnity is exceptional and granted only under the specified conditions, nevertheless the double indemnity clause is but a part of a single obligation. The entire policy is drawn by the company. This provision, therefore, must be construed in the same manner as the other provisions of the policy. While the language should not be stretched or twisted in order to reach the result more liberal to the assured, it must, when susceptible of two meanings, be construed against the company. This follows because of the relative positions of the company and the assured. The former may carefully determine the pro-

visions of its own policies, while the latter must, in considerable measure, accept the form presented to him.

"While the double indemnity clause may have been intended particularly to cover accidents occurring in a comparatively safe place, or where there are special safeguards that are likely to reduce the probability of injury, no such limitation can be found in the language used. This provision, like that for single indemnity, is but a part of the contract between the company and the insured; a contract which provides for $3,750 and $7,500, respectively, in certain eventualities, and $7,500 and $15,000, respectively, in others.

"The important question is whether the word 'elevator' in either or both policies refers merely to the car or carriage or to the whole structure, including the carriage, hoisting machinery and shaft. In common parlance it is used in both senses. Cf. Webster's New Intern. Dict. (1922). * * *

"The important words in the second policy in suit, however, are 'while a passenger and is within a passenger elevator'. The word 'within', unlike the words 'while riding in', may fairly refer to the area within the shaft and are not necessarily confined to the car or carriage; for, while in this clause 'elevator' might reasonably be held to refer either to the platform or to the entire structure, construing the policy most strongly against the company, it must be deemed to refer to the latter.

"While the limitation to single liability in case of injury to one 'while getting on or off a street railway passenger car' does not, of itself, furnish a basis for the implication that a similar limitation is excluded in case of injury while getting on or off a passenger elevator, inasmuch as such an express limitation was or at least was deemed necessary in view of the double liability to a passenger on the platform steps or running board of such a car, nevertheless we are of the opinion that the deceased was a passenger, within the meaning of the policy, when he actually entered the elevator in the sense in which this word is used in the policy; that is, when he entered the shaft with the intent to ride on the elevator as a passenger."

Appellant criticizes the reasoning in the case from which we have just quoted, and contends that, in any event. it is not controlling in this state, because it is contrary to the holding of this court in Johnson, Adm'x, v. Lincoln Hotel Co., 189 Iowa 291, 177 N. W. 550, and Puckett v. Pailthorpe, 207 Iowa 613, 223 N. W. 254.

Neither of these cases involved the construction of the provision of an insurance policy in a suit by the insured against the insurer.

In the Johnson case, the insured received injuries from which he died by falling through the elevator door into the pit. The accident was based upon the negligence of the hotel company, and the decision turned on the fact that specific acts of negligence had been alleged and the proof offered in support of these specific acts of negligence was insufficient. In the discussion it is stated in substance that it is unnecessary to consider the relation of passenger and carrier, because none of the specific allegations of negligence raised this proposition, and, "moreover, it is apparent that the relation of passenger and carrier did not exist at the time this accident occurred, nor is it traceable to any duty which the defendant owed the deceased as a common carrier."

In the Puckett case, the action was by one who claimed to be a passenger in an automobile against the owner of the automobile, and was based upon the provisions of our statute Code 1927, section 5026-b1, making the owner liable to a passenger riding as a guest. Moreover, as we have already seen, the construction of provisions as to double indemnity in insurance policies is not controlled by technical definitions and distinctions as to carriers and passengers contained in decisions involving actions between passengers and carriers, and such provisions are to be construed most strongly against the insurer. With this rule in mind, and in view of the holding in London Guarantee & Accident Co. v. Ladd, supra, that the term "elevator" reasonably may be held to refer either to the platform or to the entire structure including the shaft, we feel constrained to hold that, in the instant case, the insured was in the elevator when he entered the shaft in which the elevator was operated.

II. Appellant complains of the failure of the court to instruct the jury specifically as to what constituted an elevator, and argues that the jury was thus at liberty to find that falling down the elevator shaft would be sufficient to satisfy the terms of the policy contract. Inasmuch as, in our opinion, this is the law, this ground of error must be held to be without merit.

III. Appellant alleges error in instruction 6 given by the court, in which it told the jury that, if the insured entered the elevator in question for the purpose of being carried from one floor of the hotel building to another floor of said building, it could find that he was a passenger in said elevator within the meaning of the

provisions of the policies in suit. Appellant complains that this instruction authorizes the jury to find that, if the insured intended to use the freight elevator but negligently fell down the elevator shaft, he would be a passenger within the meaning of the terms of the policies. In other instructions the jury was told that, before the plaintiff could recover, it must find that the insured was a passenger in an elevator and that such elevator was a passenger elevator under the provisions of the policies, and the jury was further instructed as to what would constitute a passenger elevator. We do not think there was any error in the instruction here complained of.

IV. Complaint is also made in regard to the court's instructions 7, 8, and 9, in which the jury was told that, if the elevator in question was ordinarily used for the carrying of passengers, this would constitute it a passenger elevator. Under the authorities cited in division I of this opinion, we think the court was not in error in so instructing the jury, and that the elevator in question, if ordinarily used for the transportation of passengers, could be considered a passenger elevator within the meaning of the provisions in the policies, even though such elevator was of the type ordinarily known as a freight elevator and was also used for that purpose. While, under the decision in Losie v. Royal Indemnity Co., supra, the jury might properly have been told specifically that not only the use to which the elevator was put but the manner of its construction might also be considered, the appellant made no request for any such instruction. In the absence of such request, we think the instructions given by the court were sufficient.

V. Complaint is made as to other instructions given by the court, as to rulings admitting evidence that various employees of the hotel and others had used or been carried upon the elevator from floor to floor, and as to the ruling of the court in refusing to allow the jury to view the premises. We have examined the record as to the matters complained of, and, in our opinion, there is no error in connection therewith.

For the reasons stated in the opinion, the judgment of the trial court is hereby affirmed.—Affirmed.

MITCHELL, C. J., and EVANS, STEVENS, KINDIG, ANDERSON, and KINTZINGER, JJ., concur.