EUNICE E. MATHEWS, Respondent, v. METRO-
   POLITAN STREET RAILWAY COMPANY, Ap-
   pellant.

**Kansas City Court of Appeals, May 29, 1911.**

1. **APPELLATE PRACTICE: Demurrer to Evidence: Exceptions
   Preserved.** A defendant is not precluded in the appellate court
   from urging its demurrer to the evidence because in the trial
   court it offered, and the court gave, instructions which rec-
   ognized the issues of negligence tendered by plaintiff as issues
   for the jury to determine  When a defendant is forced by the
   adverse rulings of the court to abandon one position, and fall
   back to another, it may return in the appellate court to its
   first position, if it has properly preserved its exceptions to
   the adverse rulings.

2. **CARRIERS OF PASSENGERS: Boarding Moving Car: Duty
   of Conductor.** The act of the conductor in not giving the
   signal to stop the street car instead of trying, as he did, to
   pull plaintiff's deceased husband up to a safe footing on the
   step (deceased having attempted to board a moving car while
   it was ascending a viaduct) taken with the facts before the
   appellate court, will not permit the indulgence of the con-
   clusion that the conductor was guilty of negligence, even if it
   could be said that he would have exhibited better judgment
   had he stopped to pull the signal cord.

3. ———: ———: **Not a Passenger.** The attempt of deceased
   to board a street car after it had left its usual stopping place,
   and was starting up an incline did not create the relationship
   of passenger and carrier. While his attempt to board the car
   under conditions fraught with great danger may be construed
   as an offer to become a passenger, there was no act of de-
   fendant on which an implied acceptance of the offer could be
   predicated, and, consequently, it cannot be said that any sort
   of invitation was extended by defendant to deceased to board
   the car.

4. ———: **Contributory Negligence: Boarding Moving Car.**
   To attempt to board a car starting up an inclined plane where
   success is not certain, and failure must necessarily result in
   placing the would-be passenger in serious and ever-increasing
   danger, is contributory negligence as a matter of law.

5. ———: **Negligence: Signs Close to Tracks.** Plaintiff's de-
   ceased husband attempted to board a street car starting up
   an incline which was the beginning of the viaduct. He suc-
   ceeded in placing one foot on the lower step, but despite his

repeated efforts to pull himself up, was unable to do so. His leg collided with a sign of defendants, to warn trespassers, placed about ninety-two feet east of where the incline started, he was knocked from the car, and fell to the pavement sixteen feet below. *Held*, that it was not negligence for defendant to maintain the sign in the place where its supporting rod would be so close to passing cars as to endanger the safety of a person in the position of deceased.

Appeal from Jackson Circuit Court.—*Hon. H. L. McCune*, Judge.

REVERSED.

*John H. Lucas* and *Charles A. Loomis* for appellant.

(1) The court erred in refusing to give a peremptory charge in favor of the defendant. There was no evidence to authorize a verdict on either specification of negligence. Nellis, Street Railroad Accident Law, pp. 59, 183; Fuchs v. St. Louis, 133 Mo. 201; Fuchs v. St. Louis, 167 Mo. 645; Aldrich v. Transit Co., 101 Mo. App. 90; Sherman & Redfield Neg. (4 Ed.), sec. 59; Lee v. Jones, 181 Mo. 298; Glasscock v. Dry Goods Co., 106 Mo. App. 663. (2) The court erred in admitting incompetent evidence and refusing to admit competent evidence. Incompetent. Gates v. Railroad, 44 Mo. App. 488; Fullerton v. Fordgee, 144 Mo. 519; Culbertson v. Railroad, 140 Mo. 35; Mammerberg v. Railroad, 62 Mo. App. 563; Ruschenberg v. Railroad, 161 Mo. 70; Heinzle v. Railroad, 182 Mo. 528. (3) In giving and refusing instructions manifest error was committed. They were unsupported by evidence, ignored the issues, assumed the facts and were misleading. Ryan v. McCully, 123 Mo. 646; Carroll v. Carroll, 110 Mo. 557; Woods v. Campbell, 110 Mo. 572; Jordan v. Hannibal, 87 Mo. 673; Albert v. Besel, 88 Mo. 150; Heinzle v. Railroad, 182 Mo. 559. (4) In overruling motion for a new trial. Whitsett v. Ranson, 79 Mo. 260; Lennon v. Railroad, 94 S. W. 975; Gilkeson v. Railroad, 222 Mo. 202; Casey v. Transit Co., 205 Mo. 721; Aley v. Railroad, 211 Mo. 481.

*Harkless, Crysler & Histed* for respondent.

(1)   The defendant company had no right to maintain the standard or post in such proximity to its moving cars as to endanger persons who in the exercise of due care should attempt to board said cars.   Seymour v. Citizens Ry. Co., 114 Mo. 266; Kreimelmann v. Jourdan, 107 Mo. App. 64; Street Ry. Co. v. Polkey, 106 Ill. App. 98; Kird v. New Orleans, etc., Ry., 109 La. Rep. 525, 33 So. 587.   (2)   The question of the defendant's negligence in maintaining the standard or post was for the jury.   Paden v. Van Blarcom, 100 Mo. App. 185, 194; Kreimelmann v. Jourdan, 107 Mo. App. 64; Withee v. Somerset Traction Co., 98 Me. 61, 56 Atl. 204; Young v. Oil Co., 185 Mo. 634; Street Ry. Co. v. Polkey, 106 Ill. App. 98.   (3)   The mere facts (if true) that similar casualties were infrequent or had never occurred, or that the standard had been maintained in this position for a considerable length of time not controlling on this issue.   Rogers v. Meyerson Printing Co., 103, Mo. App. 686, 691; Brunke v. Tel. Co., 115 Mo. App. 36.   (4)   The defendant having by its own instructions submitted to the jury the question of defendant's negligence cannot repudiate that theory in this court.   Walker v. Robertson, 107 Mo. App. 571; Hewitt v. Price, 99 Mo. App. 666.   (5)   The conduct of the defendant's conductor is to be tested by that of an ordinarily prudent man under a similar situation.   This included reasonable presence of mind. The defendant is not to be excused from the circumstance that in the excitement of the moment the conductor lost his head.   It was a question for the jury none the less.   Howell v. Lansing City Elec. Ry. Co., 136 Mich. 432, 99 N. W. 406; Barry v. Railroad, 119 Ia. 62 95 N. W. 229.   This was the theory upon which defendant's own instruction submitted the question to the jury.   (6)   All of the instructions given by the court to the jury are to be read in connection with each other.   They are to be considered as a whole.   Montgomery v. Rail-

road, 181 Mo. 508. (7) The defendant's instruction upon the issue of Mathew's contributory negligence being abstract declarations of law, it was not error for the court, at the instance of the plaintiff, to give a mere specific instruction applying the law to the facts as she claimed them to be by the evidence produced at the trial. Devitt v. Railroad, 50 Mo. 302; Tyler v. Hall, 106 Mo. 313; Stewart v. Sparkman, 75 Mo. App. 106.

JOHNSON, J.—Plaintiff, the widow of George Mathews, deceased, sued to recover damages for the death of her husband which she alleges was caused by the negligence of defendant. A trial in the circuit court resulted in a verdict and judgment for plaintiff in the sum of $4500 and defendant appealed to this court. We certified the cause to the Supreme Court but that court sent it back and it is now before us for determination.

Mr. Mathews was killed late in the afternoon of September 28, 1903, by falling from an electric street car operated by defendant on its Eighth street line in Kansas City. The car was going east on Eighth street and had just started from Wall street where it had stopped to receive passengers. Mathews, who was forty-four years old and weighed about 210 pounds, came north on Wall street and, doubtless, intending to become a passenger on the car, ran to the rear steps and attempted to board the car while it was in motion.

There were two tracks and the car was running on the south track. From Wall street to Walnut, three blocks east, there is a steep ascent and the tracks run over a steel and concrete viaduct built by defendant and used only for street car traffic. The viaduct is just wide enough for the tracks, the outer lines of the structure being only some eighteen inches from the outer rails. The body of the car Mathews attempted to board extended over the track far enough to bring the perpendicular line of the south side of the car about on a line with the edge of the viaduct table. The car was just

starting up the west end of the viaduct and was moving slowly when Mathews grasped the handhold and attempted to board it. He succeeded in placing one foot on the lower step but, despite his repeated efforts to pull himself up, was unable to do so. The conductor, who was either in the vestibule or in the back of the car, quickly discovered his plight and tried to help him. It is not seriously contended that the conductor was remiss in discovering the peril or in going to the assistance of the endangered man but it is insisted that he was negligent in not giving the signal to stop the car instead of trying, as he did, to pull Mathews up to a safe footing on the step. The combined efforts of Mathews and the conductor continued until the rear end of the car reached a point 92 feet east of the west end of the viaduct, which, at that place, was 16 feet above the street. Mathews still was being dragged along, supported by his arms and the lifting and pulling of the conductor, and his legs protruded beyond the side of the car. At this point a sign giving warning to trespassers had been placed by defendant. The sign was held aloft by a perpendicular iron rod attached to the south edge of the viaduct and bent out at or near the place of attachment so that the perpendicular part of the rod cleared the lower step of the car by about eight inches. Mathews' leg collided with this rod, he was knocked off the car, and fell to the pavement below.

Plaintiff insists that it was negligence for the defendant to maintain the sign in a place where its supporting rod would be so close to passing cars as to endanger the safety of a person in the situation of her husband. The court overruled defendant's requests for a peremptory instruction and submitted to the jury the issues of whether defendant was negligent in maintaining the sign in the manner described and whether the conductor was negligent in not giving a signal to stop.

There is nothing in the suggestion of plaintiff that its adversary is precluded from urging the demurrer to the evidence in this court for the reason that it offered, and the court gave, instructions which recognized the issues of negligence tendered by plaintiff as issues for the jury to determine. When a defendant is forced by the adverse rulings of the court to abandon one position and fall back to another he may return in the appellate court to his first position if he has properly preserved his exceptions to the adverse rulings. We find the exceptions to the refusal of defendant's demurrers to the evidence are preserved and that plaintiff is wrong in thinking that this case falls within the rule recently applied by this court in McKee v. Jones D. G. Co., 132 S. W. 1191.

We find ourselves unable to agree with the view of some of the material facts expressed as follows in the brief of counsel for plaintiff: "Mathews was not in any danger except from being struck with the post. He was a man of large and powerful physique. It was palpable to the most casual discernment that with his two hands firmly grasping the handrails and his knees and body resting on the steps he was so far as any hazard from the mere movement of the car was concerned, in a position of perfect safety. Uncomfortable as his position was, he unquestionably could have ridden the entire distance of the viaduct without harm, but for the obstruction near the track. It was perfectly obvious that the puny efforts of the conductor to reach over and pull him farther upon the car before they would reach the standard were bound to be futile and unavailing. This was so palpable that a failure to recognize it by the conductor can be ascribed to nothing else than a complete loss of his senses for the time being."

The inference that the weight of Mathews' body was being supported by the car steps rests on the testimony of a witness from which we give this quotation: "At that moment this man flashed across the sidewalk

there in the ordinary way and grabbed the car and stepped onto the first—onto the bottom step with one foot and hopped with the other, but never hopped on— he always hit underneath. He hopped, probably, twice or three times, and as he went back onto the ground then I could notice the car was just moving and then I noticed he began to follow the car down, like (illustrating)—that is, the car was moving him along, and then he fell down onto the car or threw himself down and settled back with both knees in the step and then set back in the step and was carried across Eighth street and up the hill in that way."

Had Mathews succeeded in pulling himself up to a position of kneeling with both knees on the car step and thereby of having the step as his main support, he would not have required any assistance from the conductor, nor would he have been in any need of having the car stopped since with both hands firmly grasping handholds it would have been no task at all, and would have taken no appreciable time to pull himself up to a standing position on the step. The great mass of the oral evidence and the indisputable physical facts of the situation show beyond controversy that so small a part of the weight of the man's body rested on the steps that his continued and supreme efforts to pull himself up, abetted by the utmost efforts of the conductor, were unavailing and he was being simply dragged along and every moment was in danger of losing his grip and dropping off. A careful reading of the testimony of the witness from which we have quoted convinces us that he did not intend to say that Mathews' body was materially supported by the car step, but if such was his intention, we would reject the evidence as the statement of a palpably false impression received by the witness—false for the reason that a reasonable mind cannot reconcile it with the undisputed and indisputable physical fact that the united strength, continuously exerted, of Mathews who

156 App.—46

was a powerful man, and of the conductor who gave every pound of strength he had to spare, could not give the unfortunate man a footing on the car step.

Whether the duty of the conductor to Mathews be measured by the standard of the extraordinary care a common carrier owes to its passengers or by that of ordinary care, the facts before us will not permit the indulgence of the conclusion that the conductor was guilty of negligence. It is always for the court to decide whether a given state of facts will support an inference of negligence and the issue should be treated as one of fact only when the evidence offers ground for a difference of opinion among reasonable minds in the characterization of the act alleged to be culpable. To allow the conductor to be stigmatized as one who negligently caused the death of plaintiff's husband would be most unjust. He earnestly and honestly did all he could to save life and if it could be said that he would have exhibited better judgment had he stopped to pull the signal cord, still we find no ground in the evidence for pronouncing him negligent. A mere error of judgment committed under stress of exciting and imminent danger alone is no proof of negligence. We think the conductor committed no error and that he should be commended for what he did and tried to do. Here was a man hanging on for dear life and in extreme peril every moment from the instant in which the conductor started to rescue him. Suppose the conductor had stopped to ring the bell and Mathews had lost his hold and fallen to the pavement. Would not plaintiff be saying that he wasted precious time that better might have been utilized in the manner the conductor did use it? We deeply sympathize with plaintiff but do not approve her condemnation of one for whom she should cherish no feeling but gratitude.

Passing to the issue of negligence of defendant in having the supporting rod of its sign too near the path of passing cars, we first shall direct our attention to the

question of the relationship that existed between defendant and Mathews. It is clear that the attempt of Mathews to board the car after it had left the usual stopping place and was starting up the incline did not create the relationship of passenger and carrier. As is said by the Supreme Court in Schepers v. Union Depot Ry. Co., 126 Mo. l. c. 672:

"It must be conceded that there is difficulty in many cases in determining when the relationship of carrier and passenger begins, and what acts of the parties are sufficient to create it. The difficulty is greater in case the carrier operates a street railway, having no regular stations or station agents authorized to make contracts. In respect to such carriers passage must be taken hastily, on the streets, at points prescribed by the rules of the carrier or by the police regulations of the municipality. Yet, one test applies alike to all, and that is, the relation can only be created by contract between the parties, express or implied. There must always be an offer and request to be carried on one side, and an acceptance on the other. . . . It follows from what has been said that plaintiff did not become a passenger by a mere attempt on his part to board the car while it was in motion, as is declared by this instruction. There must have been some act on the part of the carrier indicating an acceptance. [Stager v. Railroad, 119 Pa. St. 70.]"

While the attempt of Mathews to board the car under conditions fraught with such great danger may be construed as an offer to become a passenger, there was no act of defendant on which an implied acceptance of the offer could be predicated and, consequently, it cannot be said that any sort of invitation was extended by defendant to Mathews to board the car. In the absence of such invitation Mathews did not become a passenger, and defendant owed him no other duty than that of using ordinary care to avoid injuring him after it discovered, or should have known, that voluntarily and

uninvited, he had placed himself on the car in a position of danger.

The evidence shows that the peril was created solely by the negligence, even recklessness, of the unfortunate man. We are not holding that the act of a strong, able-bodied man in attempting to board a slowly moving street car is negligence *per se.* ·"Making such an attempt would, undoubtedly, be evidence of negligence, but whether it was a contributing cause of the injury should be for the triers of fact to decide. The person making the attempt could only be held to assume the risk of injury from the ordinary movements of the car. [Booth on Street Railway Law, sec. 336; Briggs v. Railroad, 148 Mass. 75; Morrison v. Raiload, 130 N. Y. 169. Blumenthal v. Broch, 126 Mo. l. c. 676.]"

But this rule applies only in cases where the act is not attended by unusual and extraordinary dangers. Circumstances alter cases. It is one thing for an active man to try to board a slowly moving car, running on an ordinary pavement where the success of the act is almost certain and a failure ordinarily results in nothing more serious than missing the car, but it is another and entirely different thing to attempt to board a car starting up an inclined plane where success is not so certain and failure necessarily must result in placing would-be passengers in serious and ever-increasing danger. We declare as a matter of law that an ordinarily careful and prudent man would not voluntarily have encountered a risk so grave and that Mathews' predicament was due entirely to his own lack of ordinary care. How then may any reasonable person say that defendant, when it placed the sign 92 feet away from the end of the viaduct should have anticipated, not that some passenger might lean out far enough to strike the rod, or that some employee might be caught while doing some service, such as adjusting the trolley, but ·that some person not belonging to these classes might, uninvited and reckless of his own safety, attempt to jump on the

car while it was starting up the plane and hang on until the rod brushed him off? Defendant could, and as far as we know, did, make suitable provision for safeguarding its passengers and employees and owed no duty to any other class of persons since no others had any right to be on the viaduct at that place and none could be there without being guilty of negligence. Without a duty there can be no negligence. Defendant could not possibly have owed any duty to Mathews to remove the rod or to safeguard him against its action unless, in the exercise of reasonable care, it should have anticipated that someone might do as he did or do something else equally dangerous. To hold that defendant should have anticipated an occurrence of such nature and guarded against it would be to hold it to the exercise of care most extraordinary towards persons to whom it could not, in any event, owe any greater care than that of not wantonly or negligently injuring them after the discovery of their peril.

It follows that the judgment must be reversed.

All concur.