ASCHENBRENNER *v.* UNITED STATES FIDELITY & GUARANTY CO.

No. 578.   Argued March 8, 1934.—Decided April 2, 1934.

*Mr. Randell Larson,* with whom *Mr. Allen G. Wright* was on the brief, for petitioner.

*Mr. George A. Work,* with whom *Mr. Edwin C. Brandenburg* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Petitioner, a beneficiary of a policy of accident insurance issued to her husband by respondent, brought this suit in the District Court for Northern California to recover under the double indemnity provisions of the policy. At the trial liability was conceded for the single amount stipulated to be paid in the event of the insured's death by accident, but double liability was contested on the ground that the insured, at the time of the accident, was not a passenger on a common carrier within the meaning of the double indemnity provisions of the policy. A judgment entered upon a verdict for the petitioner for the double liability was reversed by the Court of Appeals for the Ninth Circuit, which directed that judgment be reduced by one-half. 65 F. (2d) 976. Certiorari was

granted to resolve an alleged conflict of the decision below with those in other circuits. See *London Guarantee & Accident Co.* v. *Ladd; Preferred Accident Ins. Co.* v. *Ladd,* 299 Fed. 562, 565 (C.C.A. 6th); *Aetna Life Ins. Co.* v. *Davis,* 191 Fed. 343 (C.C.A. 8th); *Preferred Accident Ins. Co.* v. *Muir,* 126 Fed. 926 (C.C.A. 3d); compare *Fidelity & Casualty Co.* v. *Morrison,* 129 Ill. App. 360.

The policy provided for payment of a specified amount in case of loss of life of the insured resulting from accidental bodily injury and for payment of double that amount "if such injury is sustained by the insured (1) while a passenger in or on a public conveyance (including the platform, steps or running board thereof) provided by a common carrier for passenger service." The insured, who had in his possession a ticket entitling him to transportation, arrived at the railroad station platform just as the train started to move out of the station. There was testimony from which the jury might have found that, while the train was moving at a speed of seven to ten miles an hour but was still within the station and opposite the platform, with vestibule doors open, the insured jumped onto the lower step of a car, his hand grasping the handrail, and that he continued for a brief time, while the train moved about twenty feet, to stand with both feet upon the step but with a small part of his body or clothing projecting beyond or outside the vestibule until it brushed against a bystander on the platform in a manner causing the insured to lose his hold and fall to his death.

The trial judge instructed the jury that if the insured held a ticket entitling him to ride as a passenger, and in attempting to board the train while in motion he stood with both feet upon the step, he was a passenger and entitled to recover under the double indemnity clause. The only question which it is necessary to decide here is whether the insured was a " passenger " at the time of the accident within the meaning of the policy. The Court of

Appeals ruled that he was not; it reached this conclusion by applying the term as it was said to be defined in the law of common carriers.

In personal injury suits against common carriers, brought by persons who, intending to be passengers, were injured while endeavoring to mount the steps of a moving train, courts have sometimes said that the implied invitation to board the train is withdrawn when it begins to move and that the duty of the carrier to exercise a high degree of care toward its passengers does not attach in such circumstances because one seeking to board a moving train does not become a passenger until he reaches a place of safety. *Trapnell* v. *Hines,* 268 Fed. 504, 506; *Illinois Central R. Co.* v. *Cotter,* 31 Ky. Law Rep. 679; 103 S.W. 279; *Kentucky Highlands R. Co.* v. *Creal,* 166 Ky. 469; 179 S.W. 417; *Mathews* v. *Metropolitan Street Ry. Co.,* 156 Mo. App. 715; 137 S.W. 1003; *Schepers* v. *Union Depot R. Co.,* 126 Mo. 665, 675; 29 S.W. 712; *Tompkins* v. *Portland Ry. Co.,* 77 Ore. 174, 179; 150 Pac. 758; *Palmer* v. *Willamette Valley Southern Ry. Co.,* 88 Ore. 322, 330; 171 Pac. 1169. The Court of Appeals thought that the evidence here would have made no case for the jury in a suit against the carrier, and therefore concluded that the trial judge should have directed a verdict for the insurer on the issue of double indemnity.

No doubt intending passengers who are injured in attempting to board a moving train, unless they were invited to do so, are not usually entitled to recover from the carrier. But it is not clear that such cases turn on the existence or non-existence of the passenger-carrier relationship. See *Atchison, T. & S. F. Ry. Co.* v. *Holloway,* 71 Kan. 1; 80 Pac. 31. It has often been recognized that the relationship of carrier and passenger may arise and the duty of the carrier to the passenger attach when the latter comes upon the station platform and before boarding the train. See *Warner* v. *Baltimore & Ohio R. Co.,*

168 U.S. 339; *Atchison, T. & S. F. Ry. Co.* v. *Holloway, supra; Wabash, St. L. & P. R. Co.* v. *Rector,* 104 Ill. 296; *Chicago & E. I. R. Co.* v. *Jennings,* 190 Ill. 478, 483; 60 N.E. 818; Michie, Carriers (1915), §§ 2126, *et seq.* Yet the negligence of a passenger in going into a known place of danger without the inducement or invitation of the carrier may bar his recovery for the resulting injury, even though the passenger-carrier relationship has begun and continues. See *Warner* v. *Baltimore & Ohio R. Co., supra; Daley* v. *Boston, R. B. & L. R. Co.,* 241 Mass. 78; 134 N.E. 376. And in the case of the insured, who had come upon the station platform intending to be a passenger, it may be that negligence in jumping uninvited onto the moving train would bar his recovery from the carrier without resort to the artificial assumption of a hiatus in that relationship during the brief interval required for boarding the train. The notion of such a suspension of the passenger-carrier relationship has been rejected in allowing recovery upon policies insuring against injury while travelling as a " passenger " on a railway train, both where the passenger alighted from the train at an intermediate stop and was injured in attempting to return to the train after it started to move again, *Wharton* v. *New York Life Ins. Co.,* 178 N.C. 135, 138; 100 S.E. 266, and where the insured, in beginning his journey, was injured in attempting to board a moving train. *Fidelity & Casualty Co.* v. *Morrison,* 129 Ill. App. 360.

But it is unnecessary here to follow the niceties of legal reasoning and terminology applied in negligence suits against common carriers, for we are interpreting a contract and are concerned only with the sense in which its words were used. *Farber* v. *Mutual Life Ins. Co.,* 250 Mass. 250, 254; 145 N.E. 535; *Boyd* v. *Royal Indemnity Co.,* 120 Oh. St. 515, 517; 166 N.E. 580. The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policy holder who is often without technical training, and

who rarely accepts it with a lawyer at his elbow. So if its language is reasonably open to two constructions, that more favorable to the insured will be adopted, *Stipcich .v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 322; *Mutual Life Ins. Co.* v. *Hurni Packing Co.,* 263 U.S. 167, 174; and unless it is obvious that the words are intended to be used in their technical connotation they will be given the meaning that common speech imports. *Neighbors* v. *Life & Casualty Ins. Co.,* 182 Ark. 356; 31 S.W. (2d) 418; *Tupper* v. *Massachusetts Bonding & Ins. Co.,* 156 Minn. 65; 194 N.W. 99; *Anderson* v. *Fidelity & Casualty Co.,* 228 N.Y. 475, 483; 127 N.E. 584.

We think the word " passenger " can not be restricted to the technical meaning which may be assigned to it by the law of common carriers, for it also has a common or popular meaning which would at least include the insured who, with a ticket in his possession, was riding on the steps of the train. In its usual popular significance the term, when applied to one riding a train, indicates a traveller, intending to be transported for hire or upon contract with the carrier, and distinguishes him from those employed to render service in connection with the journey. See *Wood* v. *General Accident Ins. Co.,* 160 Fed. 926; *Travelers Ins. Co.* v. *Austin,* 116 Ga. 264; 42 S.E. 522; *Ward* v. *North American Accident Ins. Co.,* 182 Ill. App. 317; compare *Continental Life Ins. Co.* v. *Newman,* 219 Ala. 311; 123 So. 93; *U.S. Casualty Co.* v. *Ellison,* 65 Colo. 252; 176 Pac. 279. None of the standard dictionaries defines the term in a fashion suggesting that its meaning is to be limited in terms of the legal liability of the carrier. While for the purposes of judicial decision dictionary definitions often are not controlling, they are at least persuasive that meanings which they do not embrace are not common.

That the stipulation to be construed is one for double indemnity calls for no different conclusion. It has been

argued that such a provision contemplates a risk which is comparatively slight and that therefore it should be strictly construed. It may be that the insurer assumes little additional risk; but the terms of the clause disclose an inducement to insure set forth in attractive detail.[1] The policy contains no exceptions exempting the insurer from liability if the injury is caused by negligence of the insured, or restricting the liability to accidents occurring only after a point of safety has been reached, and the steps of a car are specifically included in the place where injury insured against may occur. Nothing in the policy gives any hint that words in this clause are used more narrowly than those in any other. The insurer has chosen the terms, and it must be held to their full measure in this clause, as in any other, whether its promise be for more or less. *London Guarantee & Accident Co.* v. *Ladd,* 299 Fed. 562, 564; *Cedergren* v. *Massachusetts Bonding & Ins. Co.,* 292 Fed. 5, 8; *Dolge* v. *Commercial Casualty Ins. Co.,* 211 App. Div. 112; 207 N.Y.S. 42; *Stewart* v. *North American Acc. Ins. Co.,* 33 S.W. (2d) 1005 (Mo. App.).

*Reversed.*

---

[1] Discussion of the double indemnity provisions from the standpoint of risk and sales value may be found in Sommer, Manual of Accident and Health Insurance, 16, 84 et seq.; Hutcheson, Note on Double Indemnity Clauses, 19 Transactions, Actuarial Society of America, 332.