## PREFERRED ACC. INS. CO. v. RHODENBAUGH.

### No. 10385.

Circuit Court of Appeals, Sixth Circuit.

April 4, 1947.

Howard C. Walker, of Akron, Ohio, for appellant.

Charles F. Scanlon, of Akron, Ohio, for appellee.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of an action upon an insurance policy which was tried to the court, jury trial being waived. The sole question is whether the appellee's decedent, Ralph Rhodenbaugh,. was covered by the contract of insurance issued by appellant on August 1, 1945, to Goodyear Aircraft Corporation of Akron, Ohio, hereinafter called Goodyear.

The facts are stipulated, and are in substance as follows:

On August 10, 1945, Rhodenbaugh, an employee of Goodyear, was instantly killed while working in the course of his employment, by being struck by a moving Corsair airplane.

At this time Goodyear was engaged in the production of a fighter plane called the Corsair, a single-seated plane which was required to be flight tested in accordance with specifications of the United States Navy. Goodyear employed pilots, engineers and mechanics to carry on the flight testing operations, which included all operations preparatory to actual flight, the flight, itself, the handling of crabs or complaints, repairs, etc., between flights. In addition to tests in the air, the rigging of the airship, the cycle of the landing gear, the brakes, and the engine were tested and adjusted, and instruments were inspected, as a part of the flight testing operations.

Rhodenbaugh was employed by Goodyear as a "motor mechanic (flight test)." At times he operated Corsair aircraft upon the concrete apron of the flight test line for the purpose of checking the brakes. He was not a pilot, and did not take any planes into the air.

On August 10, 1945, at approximately 1 o'clock in the afternoon, Rhodenbaugh was working on the planes located on the flight test line, preparatory to getting them

ready for flight, when a Corsair plane which had developed serious motor trouble landed upon the line. Rhodenbaugh went to this plane and examined the crab sheet, which is the pilot's report concerning the plane's operation. The difficulty presented was one which Rhodenbaugh could not immediately diagnose. He therefore rode down the flight test line on a gasoline motor scooter, to pick up the liaison engineer, Fahrbach, to assist in remedying the difficulty. As Fahrbach and Rhodenbaugh were riding down the flight test line, another Corsair plane started taxiing down the runway behind the scooter, traveling in the same direction. As the plane came near the scooter, the whirling propeller caught the two men, instantly killing them.

Goodyear purchased insurance coverage from the appellant in August, 1944, for the benefit of its employees. Originally the coverage was based upon a binder with the understanding that a policy would be issued by the appellant when all the terms could be agreed upon between the parties.

After some correspondence between Goodyear and Johnston and Johnston, general agents of the appellant, there was a conference in New York City on February 5, 1945, between representatives of Goodyear and Johnston and Johnston, to work out the details of coverage of the contract to be issued. A blanket aviation accident insurance policy, No. B1 510, was later issued to Goodyear, delivered to it, and renewed on the same terms and conditions on August 1, 1945, the renewal policy being No. B1 511.

The items of the policy involved read as follows:

"Item 3. The Employees to be insured are: All Employees—

"Item 4. The Policy shall cover: All Employees:—While engaged in flight testing of aircraft or while acting as Pilots or Crew Members including entering or alighting from aircraft and also including being struck on land or water by a moving aircraft part while acting in the course of their employment. * * *"

Also involved in the consideration is Item 6, which figures the premium rates for the policy at so much per hour or fraction thereof of flying time for each employee while flight testing.

The District Court gave judgment for the appellee. The appellant contends that this judgment is erroneous on the ground that Rhodenbaugh was not engaged in flight testing of aircraft, and was not a crew member of an aircraft within the meaning of the policy, at the time of the accident.

We think the judgment of the District Court is clearly correct. Under the stipulation, the flight testing of airplanes includes all the operations required for making tests, including those preparatory to actual flight, the flight itself, the handling of crabs or complaints and repairs in between flights. Rhodenbaugh at the time of the accident was working on the flight test line, warming up engines and performing operations preparatory to getting planes ready for flight. It was his duty to check and repair the Corsair plane which engaged his attention at the very moment of the accident, and to secure the engineer to assist him. Under the conceded facts, this action was part of the operations preparatory to actual flight, and thus included in flight testing. Rhodenbaugh was classified by his employer as a motor mechanic "flight test," and at the time of his death he was actually working as a member of the ground crew. Incidentally, he fell within the definition of French's Dictionary of Aeronautics, which defines crew, landing (or ground), as "a detail of men necessary for the landing and handling of an airship on the ground."

Appellant does not deny that Rhodenbaugh was a member of the ground crew. It ignores the effect of the conceded facts, and contends that "flight testing," within the terms of the policy, does not cover all of the flight testing operations, but is limited to the testing of an airplane while passing through the air. It urges that Rhodenbaugh was not a crew member of an airplane because he was not attached to an airplane while it was in the air, and did not go with the plane nor help to man it in flight. It also stresses the provision for figuring the premium rate upon the actual

flying time of employees while engaged in flight testing as being a conclusive indication that only those employees were covered who actually took part in flights.

The provision in Item 6 is not determinative. It provides a practical method of figuring premiums, and cannot control the express coverage of the contract. Moreover, the policy itself contradicts appellant's contention that Item 6 shows that only employees actually engaged in flying were covered, for Item 4 specifically provides for the accident of being struck on land by moving aircraft or moving aircraft parts. Such an accident could not occur while the employee was in the air, and it was precisely such an accident which killed Rhodenbaugh.

The parties contracted with reference not only to flights in the air, but with reference to operations on the ground, connected with flight testing, and intended that they should be covered by the insurance. As the stipulation states, it was understood that the policy should be issued "when all of the terms could be agreed upon between the parties." At the conference of February 5, 1945, in New York, as shown by the agreed statement of the conversation, appellant's agents stated "that the policy to be issued would be in terms much broader than the original request made by the Goodyear Aircraft Corporation; that it not only covered pilots while flying, but also the test crew members and ground crew members working on and around such airplanes; that all employees of the Goodyear Aircraft Corporation are covered while engaged in working in and around the airplanes, whether in the air or on the ground, in connection with flight testing. This does not include work on the planes which takes place in the hangar, but does cover all operations in connection with taking the planes out of the hangars to the field and handling the planes on the field for the purpose of flight testing."

This was followed by a letter addressed to the appellant from Goodyear, dated March 10, 1945, which reads as follows:

"In connection with your policies Nos. B1 510 and B1 1100 issued to our Company, we interpret these as follows.

"Under policy B1 510, all employees are covered while engaged in working in and around the airplane whether in the air or on the ground in connection with flight testing. This does not include work on the plane which takes place in the hangars, but does cover all operations in connection with taking the planes out of the hangars to the field and handling the planes on the field for the purpose of flight-testing."

Appellant admits that the correspondence and the statement of its agents took place as above set forth, but denies their competency. We think the evidence is admissible, material and relevant. It was proper to consider the insurance contract in light of the facts and circumstances which led to its execution. Tesra Co. v. Holland Furnace Co., 6 Cir., 73 F.2d 553, 555. This is especially true under this record, which reveals the parties as contracting with reference to a particular problem growing out of the enormous expansion of the aircraft industry in the recent World War, and the increase in hazards attached to the production of aircraft, both for pilots and for members of the ground crew. Goodyear was seeking protection for the very situation here presented, as well as for its pilots in actual flight. The conversation of February 5, 1945, assured Goodyear that men working on the ground in connection with flight testing would be covered by the policy. In order to make doubly certain, Goodyear stated this to be its understanding in the letter of March 10, 1945, and the appellant acquiesced in this interpretation, renewing the policy on exactly the same terms. This constituted the agreement upon "all the terms of the contract" referred to in the stipulation, and in light of these circumstances, the policy covers all employees engaged in flight testing, including not only pilots, but test crew members and ground crew members. It covers all operations in and around the airplanes, both in the air and on the ground, in connection with flight testing. Rhodenbaugh, at the time of his death, was a member of the ground crew and engaged in the precise acts described in the letter and oral statement.

Appellant in substance claims that in order to sustain recovery, the policy should contain additional specific phrases covering not only all employees engaged in flight testing of aircraft, but also employees engaged in the flight testing operations connected therewith. It urges that the policy should have expressly covered all employees while acting as pilots, crew members, or ground crew members of any aircraft. But it was the duty of appellant, which wrote the contract, to have included these precise limitations if they expressed the intention of the parties. It did specifically exclude the operation of blimps and of many types of planes from the protection of the policy, but left operations of the Corsair plane covered in the general terms above set forth. Since it did not exclude members of the ground crew nor mechanics assisting in flight testing, working on the ground, it cannot now claim that these two situations are not protected. If two constructions may reasonably be employed, the courts uniformly enforce the one favorable to the assured. Bull v. Sun Life Assur. Co. of Canada, 7 Cir., 141 F.2d 456, 457, 155 A.L.R. 1014; Aschenbrenner v. United States Fidelity & Guaranty Co., 292 U.S. 80, 84, 54 S.Ct. 590, 78 L.Ed. 1137; Great American Mutual Indemnity Co. v. Jones, 111 Ohio St. 84, 144 N.E. 596, 35 A.L.R. 1023; Hudson Ins. Co. v. Yameen, 124 Ohio St. 646, 181 N.E. 895.

The judgment of the District Court is affirmed.