896 F.2d 1255
 CERTAIN UNDERWRITERS AT LLOYDS OF LONDON, Subscribing to
Policy No. EEO8782A830000-500 and Endorsement No.
508, Plaintiffs-Appellees,
v.
Lee Ann EVANS, Personal Representative of the Estate of
Andrew Glen Evans, Deceased, and Harvey Young
Airport, Inc., an Oklahoma corporation,
Defendants-Appellants,
and
Richard Hamm, individually, and Richard Hamm, doing business
as United Aviation, Defendant.
 Nos. 87-2851, 88-1230.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 23, 1990.
 
 Robert A. Todd and Jon B. Wallis, Tulsa, Okl., for defendant-appellant Lee Ann Evans.
 John Scott Hoff of Lapin, Hoff, Spangler & Greenberg, Chicago, Ill., and Barry G. West of Morrel & West, Tulsa, Okl., for defendant-appellant Harvey Young Airport, Inc.
 Donald L. Sime of Brydges, Riseborough, Morris, Franke & Miller, Waukegan, Ill., for plaintiffs-appellees.
 Before ANDERSON, SETH and BRORBY, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 Case No. 88-1230
 
 2
 Case No. 88-1230 involves a jurisdictional issue in the appeal filed by one of the defendants, Harvey Young Airport (HYA), and concerning the plaintiffs in the underlying federal court action, Certain Underwriters at Lloyds of London. The facts relevant to the jurisdictional issue are as follows.
 
 
 3
 On September 28, 1987, the district court entered summary judgment in favor of plaintiffs and against all defendants. On October 8, 1987, defendant Lee Ann Evans moved for a new trial. The district court treated the motion as one to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e), and the time within which to file notice of appeal was tolled in accordance with Fed.R.App.P. 4(a)(4); the district court denied the motion on November 17, 1987, and the time for filing notice of appeal began to run. Fed.R.App.P. 4(a)(4). On January 15, 1988, defendant HYA filed a motion for enlargement of time for filing notice of appeal pursuant to Fed.R.App.P. 4(a)(5), and requested a 30-day extension. Over plaintiffs' objections, the district court, on January 19, 1988, granted HYA an extension for filing its notice of appeal until February 15, 1988. HYA filed its notice of appeal on February 16 due to the legal holiday observed on February 15.
 
 
 4
 Asserting that the extension exceeded what is allowed by the Federal Rules of Appellate Procedure, and that the extension was otherwise without a sufficient basis, plaintiffs submit that HYA's appeal should be dismissed as this court is without jurisdiction due to an untimely notice of appeal. Based on the following, we agree.
 
 
 5
 It is well-established that an appellate court acquires jurisdiction of an appeal only upon the timely filing of a notice of appeal, and this requirement is mandatory and jurisdictional. See United States v. Robinson, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259; Gooch v. Skelly Oil Co., 493 F.2d 366, 368 (10th Cir.); Lathrop v. Okla. City Housing Authority, 438 F.2d 914 (10th Cir.), cert. denied, 404 U.S. 840, 92 S.Ct. 132, 30 L.Ed.2d 73. Federal Rule of Appellate Procedure 4(a)(1) provides, in pertinent part, that a notice of appeal in a civil case "shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from." Subsection 4(a)(5) of that rule, in pertinent part, further provides that:
 
 
 6
 "[t]he district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a).... No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later."
 
 
 7
 In addition, Federal Rule of Appellate Procedure 26(b), in relevant part, states that "[t]he court for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time; but the court may not enlarge the time for filing a notice of appeal...." And, Rule 2 of the appellate rules provides that, in certain cases, "a court of appeals may, except as otherwise provided in Rule 26(b), suspend the requirements or provisions of any of these rules...." Thus, it is clear from reading the above rules together that neither the district court nor this court has the authority to enlarge the time for filing notice of appeal beyond the time limits contained in the appellate rules.
 
 
 8
 Once the time for filing notice of appeal began to run in this case, HYA filed its motion for enlargement of time pursuant to Rule 4(a)(5) only one day before the expiration of the 30-day period provided therein for such motions, and 59 days after the tolling motion was denied. Because the district court granted HYA's Rule 4(a)(5) motion for enlargement of time more than 30 days after expiration of the 30 days prescribed by Rule 4(a) for filing notice of appeal, the court was authorized by the rules to grant, at the most, a 10-day extension from the time of its ruling. As noted above, Fed.R.App.P. 26(b) expressly prohibits extensions of time for filing notice of appeal beyond the time limits set out in the rules. Thus, even if it is assumed for argument that HYA made a sufficient showing of good cause for an extension of time under Rule 4(a)(5), the district court lacked the authority, under the circumstances of this case, to grant more than a 10-day extension for filing notice of appeal. This court likewise is without the authority to suspend the rules concerning the time limits for filing notice of appeal. Fed.R.App.P. 2.
 
 
 9
 Applying the above-cited appellate rules to this case, we must find that the extension of time granted by the district court was improper. See Fed.R.App.P. 26(b). As a result, HYA's notice of appeal in our Case No. 88-1230 was not timely filed and the appeal must be dismissed as this court is without jurisdiction. See generally Gooch v. Skelly Oil Co., 493 F.2d 366 (10th Cir.) (where extension of time within which to file notice of appeal was improperly granted, the appeal had to be dismissed for failure to timely file notice of appeal); see also United States v. Robinson, 361 U.S. 220, 80 S.Ct. 282 (timely filing of notice of appeal is mandatory and jurisdictional). In light of this ruling, we need not consider whether HYA made a sufficient showing of good cause or excusable neglect for the enlargement of time.
 
 
 10
 Although HYA acknowledges that timely filing of a notice of appeal is mandatory and jurisdictional, HYA contends that its appeal should be heard on the merits because it presents "unique circumstances," citing Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261, and Thompson v. Immigration and Naturalization Service, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404. In essence, HYA claims that because it relied on the district court's extension of time, we cannot dismiss the appeal as untimely. We do not agree that those cases are controlling in our ruling on HYA's attempted appeal.
 
 
 11
 In Harris Truck Lines, the district court found, within the initial 30-day period for filing notice of appeal, that there had been a showing of excusable neglect sufficient to allow an extension of time within which to file notice of appeal; a two-week extension was granted. The Court of Appeals for the Seventh Circuit dismissed the appeal as untimely, ruling that appellant had failed to make a sufficient showing to the district court of excusable neglect warranting an extension of time. The Supreme Court reversed the court of appeals, stating that "[i]n view of the obvious great hardship to a party who relies upon the trial judge's finding of 'excusable neglect' prior to the expiration of the 30-day period [for filing notice of appeal] and then suffers reversal of the finding, it should be given great deference by the reviewing court." Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. at 217, 83 S.Ct. at 285.
 
 
 12
 The case at bar is distinguishable from Harris Truck Lines. The most important difference lies in the fact that in Harris Truck Lines the district court did not grant an extension of time for filing notice of appeal in excess of the limits imposed by the appellate rules. As noted above, the district court here granted an enlargement of time for filing notice of appeal which exceeded the maximum time limits prescribed by the appellate rules. See Fed.R.App.P. 4; 26(b).
 
 
 13
 Harris Truck Lines holds that when an extension of time is granted within the initial 30-day period for filing notice of appeal and is based on a finding of excusable neglect, the appellate court should give great deference to that finding. See our holding in Gooch v. Skelly Oil Co., 493 F.2d at 368 (finding of excusable neglect for purposes of Rule 4(a), should not be disturbed absent clear abuse of discretion); however, such is not the case at bar. Our dismissal of HYA's appeal is not based on our finding an insufficient showing of good cause or excusable neglect underlying the extension of time; our ruling here is the result of applying the express language of the Federal Rules of Appellate Procedure.
 
 
 14
 In addition, appellant in Harris Truck Lines detrimentally relied on the extension of time in allowing the initial 30-day period within which to timely file notice of appeal to expire; had the requested extension instead been denied, it still would have been possible for a timely notice to have been filed. Here, HYA was already outside the prescribed 30-day period, and its motion for an extension of time under Fed.R.App.P. 4(a)(5) was the only available means for filing notice of appeal. In light of this factual difference, we do not find the "hardship," or detrimental reliance, by HYA in the present case as existed in Harris Truck Lines.
 
 
 15
 Moreover, because we believe that an appellant has a duty to familiarize himself with the appellate rules, and HYA admits that if Rule 4(a)(5) had been "literally followed," a 10-day extension was the maximum allowable under the circumstances of this case, we cannot say that HYA's reliance on the extension was reasonable reliance. Indeed, in light of the fact that HYA's motion for enlargement of time was filed only one day prior to the expiration of the 30-day period beyond the initial 30-day period prescribed by Rule 4(a) for filing notice of appeal, HYA either knew or should have known that a 10-day extension from the date of the district court's ruling was the maximum allowable under Rule 4(a)(5). For the same reason, we also agree with plaintiffs' claim that HYA's motion improperly asked for a 30-day extension at a time in the proceedings when a 10-day extension was the maximum allowable. We believe that any error which may have been invited regarding Case No. 88-1230 was invited by HYA.
 
 
 16
 We do not find either unique or extraordinary circumstances in the present case. Based on the foregoing, we must dismiss HYA's appeal.
 
 Case No. 87-2851
 
 17
 The issues presented by Case No. 87-2851 are quite different. Lee Ann Evans, as personal representative of the estate of Andrew Glen Evans, deceased, had filed a wrongful death action in an Oklahoma state court. Andrew Evans died as the result of a plane crash while riding with Richard Hamm, the owner and pilot of the aircraft and a participant in the 42nd Annual Fly-In at the Harvey Young Airport. Certain Underwriters at Lloyds of London (plaintiffs) filed this underlying federal action seeking declaratory judgment on their claim that the death of Andrew Evans was not covered by the insurance policy issued by them for the Fly-In. Plaintiffs and Evans both moved for summary judgment, and summary judgment was entered in favor of plaintiff Underwriters. The district court's grant of summary judgment was based upon certain exclusionary language contained in the insurance policy. On appeal, Evans asserts several claims of error in the federal district court's grant of summary judgment in favor of plaintiffs.
 
 
 18
 In reviewing the district court's grant of summary judgment, this court must view the case in the same manner as did the district court. Baker v. Penn Mut. Life Ins. Co., 788 F.2d 650 (10th Cir.). In considering the motions and in determining whether any genuine issue of material fact exists and, if not, whether the substantive law was correctly applied, we must view the record in light of Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. Conclusory allegations, however, do not establish an issue of fact under Fed.R.Civ.P. 56.
 
 
 19
 Because the material facts which underlie this action are not in dispute, we must determine whether the district court correctly applied the substantive law in ruling that decedent was a "passenger" in Hamm's aircraft for purposes of the exclusionary provision contained in the insurance policy. Where, as here, our review is for whether the substantive law was correctly applied, we may affirm the granting of summary judgment if any proper ground exists to support the district court's ruling. Hokansen v. United States, 868 F.2d 372, 374 (10th Cir.).
 
 
 20
 Evans claims the district court erred in ruling that the unambiguous language of the insurance policy excluded coverage for decedent's death. In granting plaintiffs' motion for summary judgment, the district court correctly stated that under Oklahoma law the terms of an insurance policy are to be examined in their plain and ordinary meaning, relying on Continental Oil Co. v. National Fire Ins. Co., 541 P.2d 1315 (Okla.). The district court then stated that the automobile cases cited by Evans were inapplicable because there was no need in this case to look at decedent's paying status to determine if he was a "passenger" for purposes of the insurance policy. The court noted that "the term 'passenger' is commonly defined as a 'person who travels in a train, airplane, ship, bus, or other conveyance, without participating in its operation,' " citing the American Heritage Dictionary of English Language. Because it is undisputed that decedent rode in the rear seat of the aircraft and had no access to the controls, the court found that he was a "passenger" in the plain and ordinary meaning of the term.
 
 
 21
 Evans urges this court to rule that decedent was a guest in the aircraft, rather than a passenger, because the ride given him by Hamm was gratuitous. It is submitted that if such a distinction is made based on decedent's nonpaying status, then the exclusionary language in the insurance policy would not apply to preclude coverage. Having reviewed the authorities cited by Evans, we are not persuaded that the district court was incorrect in its application of the substantive law when it determined that decedent was a "passenger" in Hamm's aircraft.
 
 
 22
 Our discussion begins by recognizing that the Supreme Court of Oklahoma has held that when a person rides on a train and gives consideration therefor, whether by deed or money, he is a passenger. See St. Louis & S.F. R. Co. v. Kerns, 136 P. 169, 172 (Okla.). Evans would have us read this case as requiring some form of payment in order for someone to attain the status of "passenger." However, our reading of that case, and other authorities cited by Evans, does not convince us that such a narrow reading is warranted. Indeed, while the United States Supreme Court has said that the term "passenger" "would at least include [someone] ... with a ticket in his possession, [and] riding on the steps of the train," the Court then distinguished a "passenger" from "those employed to render service in connection with the journey." Aschenbrenner v. United States Fid. & Guar. Co., 292 U.S. 80, 85, 54 S.Ct. 590, 593, 78 L.Ed. 1137 (1934) (emphasis added).
 
 
 23
 While it is clear that one who pays for his transportation is a "passenger," it does not necessarily follow that one is a "passenger" only if payment for the transportation is made. The dictionary definition of "passenger" relied upon by the district court in this case is at least persuasive that the term was given a common meaning for purposes of construing the provision of the insurance policy in question. Cf. Aschenbrenner v. United States Fid. & Guar. Co., 292 U.S. at 85, 54 S.Ct. at 593 (dictionary definitions are at least persuasive that meanings which they do not embrace are not common).
 
 
 24
 Because the definition of "passenger" adopted by the district court in this case is not in conflict with Oklahoma precedent or Oklahoma statutory law, we hold that the district court correctly applied the substantive law in finding that decedent was a "passenger" in Hamm's aircraft for purposes of the insurance policy.
 
 
 25
 We also find no basis for reversal in the district court's ruling that the automobile cases relied upon by Evans are not controlling in the disposition of this case. Plaintiffs correctly have pointed out that an aircraft does not come within the definition of "vehicle" under Oklahoma law. See Okla.Stat.Ann. tit. 47, Sec. 1-186 (West 1988). Accordingly, motor vehicle law is not controlling here.
 
 
 26
 Evans then submits that even if the district court correctly decided decedent was a "passenger," the exclusionary provision of the insurance policy is still inapplicable because Hamm's aircraft was only used "in connection with" the Fly-In, and not "used directly" in the event. The "used directly" is the term used in the exclusion in reference to the aircraft.
 
 
 27
 The following are the undisputed facts relevant to this issue. Prior to the HYA Fly-In, radio advertisements promoting the event announced that Hamm's aircraft, the Breezy, would be at the Fly-In. Hamm arrived at HYA on Friday, the first day of the weekend Fly-In, and he attended the cookout that night at the airport. Having obtained approval from the organizers of the Fly-In, Hamm flew his aircraft during the Fly-In all day Saturday, selling "Breezy" tee shirts and giving rides to those members of the public who purchased a tee shirt. Hamm was also at the Fly-In on Sunday, the final day of the event. It was on this last day of the Fly-In that Hamm took decedent on the fateful ride which ended in an accident resulting in decedent's death; decedent did not purchase a tee shirt for his ride in the Breezy as Hamm was a personal friend of decedent's parents, both of whom had gone for a ride in the Breezy just prior to the accident in question.
 
 
 28
 Thus the facts are undisputed that the plane, the Breezy, was "used directly" in the Fly-In.
 
 
 29
 Because the facts as to Hamm's participation in the Fly-In are undisputed, and the facts as to the use of the plane are undisputed, and the status of the decedent is undisputed, the task of the district court was an application of the insurance policy to these facts. See Rigsby v. Mutual of New York, 331 F.2d 353 (10th Cir.) (where facts are undisputed and only issue was application of insurance policy provisions, case is properly considered on motion for summary judgment).
 
 
 30
 The district court in reaching its summary judgment necessarily considered and decided all elements in the exclusion clause--the "passenger" status of the decedent and "used directly" (in the Fly-In) status of the plane. The whole exclusionary clause had to be considered also in the denial of Evans' motion for summary judgment. The facts were undisputed as to the elements. It is not significant that the district court may not have separately discussed the elements.
 
 
 31
 The district court's ruling was the result of an application of the insurance policy provisions under the prevailing law to the undisputed facts. Disposing of the case on summary judgment was proper as was the result. See Rigsby v. Mutual of New York, 331 F.2d 353 (10th Cir.).
 
 
 32
 The appeal of HYA in Case No. 88-1230 is DISMISSED, and the summary judgment at issue in Case No. 87-2851 is AFFIRMED.